## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

**Mary Joanna Comer,**
    Plaintiff, *In Propria Persona (for one's self),*

v.

**Daniel Joseph Tolan,**
    *in his Individual and Personal Capacity,*

    and

**Sharon Jorgenson,**
    *in her Individual and Personal Capacity,*

    Defendants.

Case No. 26-cv-268-wmc

**COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983; CHALLENGE TO PROBABLE CAUSE; DEMAND FOR GRAND JURY INDICTMENT; DEMAND FOR FOLLOW-UP FORENSIC INTERVIEWS; AND DEMAND FOR FEDERAL ASSERTION OF JURISDICTION**

**JURY TRIAL DEMANDED**

—

## PART I

## CIVIL ACTION AGAINST JUDGE DANIEL JOSEPH TOLAN AND CLERK OF COURT SHARON JORGENSON, EACH IN THEIR INDIVIDUAL AND PERSONAL CAPACITY, PURSUANT TO 42 U.S.C. § 1983

### I. PRELIMINARY STATEMENT

1. Plaintiff Mary Joanna Comer (*"Ms. Comer"* or *"Plaintiff"*), proceeding *in propria persona* with the assistance of her Constitutional Counsel of Choice, Thomas Edward Humphrey, brings this civil action under 42 U.S.C. § 1983 against Defendant Daniel Joseph Tolan (*"Judge Tolan"*) and Defendant Sharon Jorgenson (*"Clerk Jorgenson"*), each in their individual and personal capacity, seeking compensatory and punitive damages for the willful, deliberate, and systematic

deprivation of Plaintiff's rights secured by the First, Fifth, Sixth, Ninth, and Fourteenth Amendments to the United States Constitution.

2. This action arises from Judge Tolan's on-record refusal, memorialized in the official court record of the March 2, 2026 Initial Appearance in *State of Wisconsin v. Mary J. Comer*, Case No. 2026CF000023, Polk County Circuit Court, to accept, docket, and enter into the official court record five properly submitted defense filings. Judge Tolan's on-record statement—"CT will not accept documents that are not filed by an attorney or from a nonparty"—constitutes a judicial admission of willful constitutional deprivation that forfeits any claim to qualified immunity as a matter of law.

3. On March 4, 2026, Judge Tolan issued a formal written Order (Document 14, filed March 5, 2026, in Case No. 2026CF000023) that memorializes, confirms, and escalates the constitutional deprivations described in Paragraph 2. A true and correct copy of this Order is attached hereto as Exhibit A and incorporated herein by reference. In this Order, Judge Tolan:

(a) Ordered that all documents filed by Mary Joanna Comer be stricken from the court record and their document names be changed to *"Third-party filing Stricken by the Court"*—thereby not merely refusing to accept Plaintiff's defense filings but affirmatively destroying their content on the official docket;

(b) Ordered that "[n]o further filings shall be made in this matter by anyone other than the named parties or a licensed attorney"—thereby issuing a prospective ban that categorically prohibits Plaintiff from receiving assistance from her chosen counsel in all future filings;

(c) Ordered that "[n]o one other than the named parties or a licensed attorney shall mail, email, fax, or deliver any filings or correspondence related to this matter to the Court"—

thereby extending the prohibition beyond court filings to all forms of communication, including correspondence;

(d) Threatened that "[v]iolations of this Order may be punishable as Contempt of Court"—thereby chilling the exercise of constitutionally protected rights under threat of criminal sanction.

4. Document 14 is significant for multiple reasons. First, it confirms that Judge Tolan's oral refusal at the March 2, 2026 Initial Appearance was not an inadvertent administrative action but a deliberate judicial policy, subsequently reduced to a formal written order. Second, the Order's directive to change document names to "Third-party filing Stricken by the Court" constitutes affirmative destruction of Plaintiff's defense record—going beyond mere rejection to active obliteration of the documents' substantive content from the public docket. Third, the prospective ban on all future filings and correspondence with the assistance of Plaintiff's chosen counsel represents an ongoing, continuing deprivation of constitutional rights that is not limited to the five documents initially refused. Fourth, the contempt threat operates as a direct chilling effect on the exercise of First Amendment petition rights and Sixth Amendment rights to assistance of counsel.

5. The Order cites Wisconsin Statute § 757.30 as its sole legal authority and characterizes the filings it strikes as the unauthorized practice of law. This characterization fundamentally misrepresents the nature of the documents at issue. Of the five filings submitted through the Wisconsin eFiling system on February 27, 2026, four were *the Defendant's own filings* — documents filed by and on behalf of Mary Joanna Comer, the named criminal defendant, prepared with the assistance of her Constitutional Counsel of Choice, Thomas Edward Humphrey. These four documents — the Defendant's Motion for Constitutional Counsel of

Choice, the Memorandum in Support of Defendant's Motion, the Sworn Testimony of Mary J. Comer, the Psychological and Legal Research Memorandum — bore the Defendant's name, advanced the Defendant's defense, and were submitted on the Defendant's behalf, in the Defendant's case, as documents of the Defendant's own choosing. By characterizing these filings as the unauthorized practice of law under § 757.30, Document 14 does not regulate the conduct of a non-lawyer advisor. It strips the criminal defendant herself of the right to file documents in her own defense. The Order treats the Defendant's exercise of her constitutional right to prepare and submit her own filings with the aid of a chosen advisor as though it were the unauthorized appearance of a non-attorney before the court. This conflation of the constitutional right to assistance of counsel with the practice of law is constitutionally impermissible.

6. Document 9 — the Notice of Appearance of Constitutional Counsel of Choice — was signed and submitted by Thomas Edward Humphrey in his own capacity, announcing his appearance as Constitutional Counsel of Choice for the Defendant pursuant to the Sixth Amendment, the Judiciary Act of 1789, and all related constitutional authorities. Even as to this filing, Document 14's characterization is constitutionally infirm. A notice of appearance by a chosen advisor is not the practice of law — it is the procedural mechanism by which the Defendant's Sixth Amendment right to assistance of counsel is given practical effect. The Notice of Appearance expressly stated that Thomas Edward Humphrey appeared "solely as Constitutional Counsel of Choice — not as a licensed attorney, not as an officer of this Court, and not as an agent holding power of attorney to bind Defendant in her absence," and that he appeared "at the express direction and under the direct supervision of Defendant Mary Joanna Comer." The filing of such a notice — transparently identifying the capacity, basis, and limitations of the appearance — is itself a constitutionally protected act: the assertion by the accused of her chosen method of

defense. To characterize it as the unauthorized practice of law is to declare that a criminal defendant's act of identifying her own advisor to the court constitutes a crime.

7. Plaintiff's filings were submitted *in propria persona* — by Ms. Comer herself, exercising her right of self-representation — with the assistance of her chosen advisor. The Judiciary Act of 1789, 1 Stat. 92, § 35, expressly distinguishes between "counsel or attorneys at law," and the Sixth Amendment right to "assistance of counsel" is not limited to licensed practitioners. *Faretta v. California*, 422 U.S. 806, 819–20 (1975). The application of an unauthorized-practice-of-law statute to extinguish the constitutional rights of a criminal defendant — rather than to regulate the conduct of the non-lawyer advisor, if regulation were warranted — is a constitutionally impermissible use of state regulatory authority. Document 14 does not punish the unauthorized practice of law. It punishes *the Defendant* for exercising her Sixth Amendment right to choose her own counsel and for daring to file a defense in her own case.

8. Judge Tolan and Clerk Jorgenson acted in concert to suppress Plaintiff's constitutionally protected defense filings. Upon receipt of the five documents submitted through the Wisconsin eFiling system on February 27, 2026, Clerk Jorgenson did not perform her mandatory ministerial duty to docket the filings. Instead, she withheld them from the official record for six days and diverted them to Judge Tolan for extrajudicial review outside the docketing process. On March 5, 2026, Judge Tolan issued Document 14 — an order that categorically bans all filings from any person who is not the named party or a licensed attorney, and that extends this prohibition to all correspondence of any kind, by mail, email, fax, or hand delivery. Clerk Jorgenson then executed the directives of Document 14 by coordinating the simultaneous docketing and striking of Plaintiff's filings and systematically renaming each document to conceal its content from the public record. This was not a series of independent discretionary acts. It was a coordinated

course of conduct between a sitting circuit court judge and the Clerk of Court to intercept, suppress, and erase the defense filings of a criminal defendant — conduct irreconcilable with any claim of good faith, judicial inadvertence, or legitimate exercise of judicial or ministerial discretion by either Defendant.

9. The unlawfulness of Document 14 is amplified by the Wisconsin Court System's own contemporaneous eFiling guidance. On February 25, 2026 — just two days before Plaintiff's five documents were submitted — the Wisconsin Court System published an updated eFile Support page titled "Circuit court eFiling – eFiling on an existing case as non-party filer." A true and correct copy of this support page is attached hereto as Exhibit B and incorporated herein by reference. The updated page provides step-by-step instructions specifically for non-party filers, detailing the process by which a person who is not a party on a case may submit documents on that existing case to any Wisconsin circuit court through the eFiling system. The page identifies the eCourts account types eligible to use the non-party filing feature, which include "Self-represented party," "Wisconsin attorney," "Pro hac vice attorney," "Designated filer," "Filing agent," "Non-party filer," and "social worker." The breadth of this list confirms that the Wisconsin Court System's eFiling infrastructure was designed to receive filings from a wide range of non-party participants — not merely licensed attorneys — and that the State affirmatively maintained and updated this functionality for continued public use.

10. Document 14 directly contradicts this authorization. The Order declares that the court "will not accept documents that are not filed by an attorney or from a nonparty" and imposes a categorical ban on all non-party filings and correspondence by any method. In so doing, Document 14 purports to prohibit, within Judge Tolan's courtroom, the very category of non-party filing that the Wisconsin Court System had updated its public guidance to authorize forty-

eight hours earlier. The State built, funded, and publicly documented an electronic filing infrastructure that expressly contemplates non-party document submission on existing cases. The State updated that infrastructure on February 25, 2026, reaffirming its availability and providing detailed instructions for its use. And on March 5, 2026, a single circuit court judge — citing no authority beyond the inapposite unauthorized-practice-of-law statute, Wis. Stat. § 757.30 — issued a blanket order that nullifies that authorization within his courtroom by prohibiting all filings from any person who is not a licensed attorney or the named party. This temporal proximity — between the State's reaffirmation of non-party filing on February 25 and Document 14's categorical prohibition of non-party filing on March 5 — renders the Order's invocation of § 757.30 pretextual on its face. The Order does not regulate the unauthorized practice of law. It suppresses the defense filings of a criminal defendant and prohibits an entire category of court access that the State's own judicial infrastructure was contemporaneously designed and publicly maintained to provide. The issuance of Document 14 and Clerk Jorgenson's coordinated execution of its directives constitute a jointly undertaken course of conduct to suppress constitutionally protected defense filings in knowing or deliberately indifferent violation of Plaintiff's clearly established rights under the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

11. Document 14 eliminates any possible defense of absolute judicial or qualified immunity or good faith. A judge who first announces an oral rule refusing a criminal defendant's filings, and then two days later issues a formal written order striking those filings, banning all future filings and correspondence from the defendant's chosen advisor, renaming the stricken documents to obscure their content, and threatening contempt for any attempt to exercise the rights at issue—

has demonstrated a pattern of deliberate, escalating constitutional deprivation that is wholly incompatible with good faith or inadvertence.

12. The conduct memorialized in Document 14 additionally constitutes a pattern of violations of Wisconsin Supreme Court Rule Chapter 60, the Code of Judicial Conduct, which is relevant to this action as evidence of the knowing, willful, and deliberate character of the constitutional deprivations alleged. Although SCR Chapter 60 is not itself a basis for civil liability, its binding rules define what constitutes proper judicial conduct and thereby delineate the outer boundary of the judicial function that absolute judicial immunity was designed to protect. Where a judge's conduct violates the binding obligations of SCR Chapter 60, that conduct is probative of the element of willfulness required under 42 U.S.C. § 1983 and of the determination that the conduct fell outside the scope of legitimate judicial action. Specifically:

(a) SCR 60.02 imposes on every Wisconsin circuit court judge an affirmative, non-discretionary obligation to "personally observe" the standards of judicial conduct so that "the integrity and independence of the judiciary will be preserved." The Code's Commentary expressly states that "violation of this chapter diminishes public confidence in the judiciary and thereby does injury to the system of government under law." Judge Tolan's issuance of Document 14—which destroyed Plaintiff's sworn testimony from the record of a Class C felony proceeding, imposed a prospective ban on all future filings and correspondence from her chosen advisor, and threatened contempt for any attempt to exercise constitutionally protected rights—constitutes a violation of the affirmative duty imposed by SCR 60.02.

(b) SCR 60.03(1) requires a judge to "respect and comply with the law"—a term which, under SCR 60.01(10), expressly includes "constitutional provisions." The Commentary to

8 of 72

SCR 60.03 declares that "[a]ctual improprieties under this standard include violations of law." Judge Tolan's conduct, which violated. the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, simultaneously constituted actual impropriety under SCR 60.03(1).

(c) SCR 60.04(1)(b) prohibits a judge from being "swayed by partisan interests" and requires that a judge "be faithful to the law"—again, a term encompassing constitutional provisions. A judge who invokes a state regulatory statute to extinguish the constitutional rights of a criminal defendant, rather than applying the least restrictive alternative that would satisfy the regulatory concern without constitutional deprivation, acts contrary to the obligation of fidelity to law required by SCR 60.04(1)(b). The violation of these binding rules, taken together with the documentary record set forth in Paragraphs 2 through 11 above, is further evidence that Defendant Tolan acted with knowing, willful, and deliberate intent to deprive Plaintiff of her constitutional rights.

13. Ms. Comer is a 61-year-old woman facing a charge of Second Degree Sexual Assault of a Child under Wisconsin Statute § 948.02(2)—a Class C felony carrying up to forty (40) years of imprisonment. The suppression of her sworn testimony and complete legal defense from the court record in a case of this magnitude constitutes a deprivation of constitutional rights of the most egregious kind.

14. The conduct of Defendant Tolan represents the gravest species of judicial tyranny. As Montesquieu observed: "When the legislative and executive powers are united in the same person, or in the same body of magistrates, there can be no liberty." *The Spirit of Laws*, Book XI, Section 6 (1758). James Madison, grounding the constitutional structure in this very principle, declared in *The Federalist No. 47* that "[t]he accumulation of all powers, legislative, executive,

and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." When Judge Tolan announced a categorical rule of his own invention—and then reduced it to a formal written order with the force of contempt—he ceased to function as a judicial officer and arrogated to himself the legislative power, becoming the judge-legislator both Montesquieu and Madison warned would reduce liberty to arbitrary control. Document 14 is the institutional embodiment of the tyranny Madison described: Judge Tolan simultaneously exercised legislative power by creating a new rule of general prospective application, executive power by threatening criminal contempt for any party who violated the rule, and judicial power by presiding over the very proceeding to which the rule applied—all three functions accumulated in the same hands, in the same proceeding, directed at the same party.

15. The conduct of Defendant Tolan is further illuminated by SCR 60.03(2), which provides that "[a] judge may not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment" and "[a] judge may not lend the prestige of judicial office to advance the private interests of the judge or of others." The creation of a categorical rule by judicial fiat—without statutory authority, without briefing, without adversarial process, and enforced by the coercive power of contempt—constitutes the misuse of the prestige of judicial office to impose a private rule of the judge's own invention on a criminal defendant. When Judge Tolan announced, and then formalized in writing, a prohibition having no basis in Wisconsin law, he did not exercise judicial power—he exercised personal power cloaked in the authority of the bench. To the extent Judge Tolan's categorical exclusion of Plaintiff's filings served the prosecution's interest in maintaining an unopposed record, that conduct additionally raises the concern addressed in SCR 60.03(2): the use of judicial office to advance the private interests of

another party. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) (private parties who conspire with judges to deprive persons of constitutional rights may be liable under 42 U.S.C. § 1983).

16. The documented pattern of Judge Tolan's conduct raises substantial and legitimate questions regarding the motivations underlying his issuance of Document 14. Although the Order's prohibitions are directed at Plaintiff and operate to strip her of constitutionally protected rights, the substance, tenor, and timing of the Order suggest that Judge Tolan's actions may have been animated not by any legitimate concern for the orderly administration of justice, but by personal offense — whether at Plaintiff's assertion of her constitutional right to proceed in propria persona with chosen counsel, at the participation of Thomas Edward Humphrey as Constitutional Counsel of Choice, or at the perceived challenge to judicial authority inherent in the filing of substantive defense documents that vigorously contest the evidentiary foundation of the prosecution's case.

17. Furthermore, although Document 14 is directed at Plaintiff's constitutional rights, the specific prohibitions of the Order — banning filings and all forms of correspondence from "anyone other than the named parties or a licensed attorney" — appear targeted with surgical precision at the exclusion of Thomas Edward Humphrey, Plaintiff's Constitutional Counsel of Choice, rather than at any legitimate regulation of the proceedings. The actions taken by Judge Tolan directly and irreparably harm the Defendant, but they appear to be motivated by the judge's personal offense at the involvement and advocacy of Plaintiff's chosen counsel. This inference is supported by the Order's categorical reach: it does not merely regulate the form or procedure of filings — it categorically extinguishes the participation of a specific individual in every conceivable mode of communication with the Court, extending even to the prohibition of mail and email correspondence.

18. To the extent that Judge Tolan's categorical exclusion of Plaintiff's defense filings operates to the exclusive advantage of the prosecution, this Court is entitled — and indeed obligated — to inquire whether Judge Tolan maintains any undisclosed financial, personal, political, or professional interest in the prosecution of this case that would render his impartiality reasonably subject to question. See 28 U.S.C. § 455(a) (requiring disqualification where a judge's impartiality "might reasonably be questioned"); SCR 60.04(1)(b) (requiring fidelity to law); SCR 60.03(2) (prohibiting the use of judicial office to advance private interests). The systematic nature of the deprivations at issue — from oral pronouncement to formal written order, from passive refusal to active destruction of the record, from exclusion of filings to prohibition of all correspondence — demands thorough investigation into the full scope of Judge Tolan's potential motivations, including but not limited to: personal animus toward Plaintiff's exercise of constitutional rights; personal animus toward Plaintiff's Constitutional Counsel of Choice; any direct or indirect financial interest in the outcome of the underlying prosecution; any relationship, communication, or coordination with the prosecution; and any institutional or political interest that would be served by the suppression of Plaintiff's defense. Plaintiff reserves the right to pursue discovery on these questions and to amend this Complaint to add additional claims and theories of liability as the investigation warrants.

19. The constitutional violations at the center of this action were not unforeseen. The Framers of the Constitution, writing in *The Federalist Papers* to explain and defend the design of the new government, identified the precise structural failures that this case presents—and designed the federal system specifically to prevent them. James Madison, in *Federalist No. 10*, identified the foundational principle that "no man is allowed to be a judge in his own cause, because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity." He

extended this principle from individuals to institutions: a body of men acting simultaneously as judges and as parties to the causes they adjudicate cannot be trusted to render impartial justice. Madison's remedy was structural—a federal system with diffused authority that prevents any single faction from dominating the proceedings that determine the rights of citizens. Document 14, issued by the presiding judge of the very proceeding it governs, is the institutional embodiment of the corruption Madison warned must be prevented. The judge created the rule, applied the rule, and threatens contempt against any attempt to challenge the rule—all within the same proceeding, all directed at the same party, all serving the same interest: the unchallenged prosecution of Mary Joanna Comer.

20. Alexander Hamilton, in *Federalist No. 80*, drew the direct constitutional consequence: when state tribunals "cannot be supposed to be impartial," the federal judicial authority must extend to fill the void. Hamilton wrote that "[t]he reasonableness of the agency of the national courts, in cases in which the State tribunals cannot be supposed to be impartial, speaks for itself." This Court is the tribunal Hamilton described. This case is the circumstance that makes federal jurisdiction not merely proper but constitutionally necessary. The Framers built this Court for cases like this one.

21. The structural inadequacy of state-level remedies to address the constitutional violations at issue is independently confirmed by Plaintiff's direct engagement with the Wisconsin Judicial Commission. Plaintiff had already submitted complaints to the Federal Bureau of Investigation and the U.S. Department of Justice, Civil Rights Division (Case No. 736216-CHB) prior to March 5, 2026. When Judge Tolan's conduct escalated — through the issuance of Document 14, which ordered the filings stricken, renamed, and all future non-party filings and correspondence categorically banned — Plaintiff transmitted a formal Complaint of Judicial Misconduct to the

Commission (judcmm@wicourts.gov) on March 5, 2026, attaching the FBI complaint, Document 14, the DOJ Civil Rights Division case acknowledgment, and the FBI Electronic Tip Form confirmation as evidence of the escalating pattern. The complaint was simultaneously served on Clerk of Circuit Court Sharon E. Jorgenson, County Board Chair Jay Luke, District Attorney Jeffrey Kemp, ADA Holly Wood-Webster, and all law enforcement officers involved in the underlying prosecution. Within forty-eight minutes, the Commission responded with a form acknowledgment that expressly disclaimed any authority to grant relief to a litigant, take action to alter the outcome of a case, provide legal advice, compel a judge's recusal, or become involved in any way in a person's court proceeding. The Commission directed Plaintiff to complete a standardized complaint form and advised that "complainants should pursue their legal remedies by appropriate action, as they may desire, without regard to any action the Commission may in the future take." This response confirms what the Framers anticipated when they vested federal courts with jurisdiction to enforce constitutional rights against state officials: that the states' own internal mechanisms for policing judicial conduct are structurally incapable of providing the immediate, binding relief necessary to protect a criminal defendant's fundamental rights from ongoing deprivation by a sitting state judge. See The Federalist No. 80 (Hamilton) (arguing that federal courts must have cognizance of cases involving the deprivation of rights by state actors precisely because state tribunals cannot be relied upon to check their own). The Judicial Commission's response is not evidence of a system that failed — it is evidence of a system that, by its own admission, was never designed to provide the relief Plaintiff requires. A true and correct copy of Plaintiff's Judicial Commission complaint and the Commission's response are attached hereto as Exhibit E and incorporated herein by reference.

22. The necessity of federal jurisdiction is made most urgent by the nature of the deprivation itself: it is not the act of a single rogue official, but a conspiracy between the presiding judge and the clerk of court — the two officials who together exercise exclusive control over the official record of a criminal proceeding. When a judge and clerk act in concert to suppress, alter, and conceal a defendant's filings, no state-level remedy can provide adequate relief, because every avenue of state review — appellate, supervisory, or administrative — depends upon the integrity of the very court record that the conspirators have falsified. An appellate court reviewing the CCAP docket for Case No. 2026CF000023 would see five entries labeled "Third-party filing Stricken by the Court" and have no way of knowing that those entries represent a criminal defendant's sworn testimony, her motion for constitutional counsel, and the complete legal defense prepared on her behalf. The Judicial Commission has confirmed, in its own response (Exhibit E), that it cannot grant relief, compel recusal, or intervene in proceedings. The conspiracy between Judge Tolan and Clerk Jorgenson has corrupted the foundational instrument of state judicial accountability — the official record — and only a federal court, exercising independent jurisdiction under 42 U.S.C. § 1983 and the Fourteenth Amendment, can restore that record, hold the conspirators accountable, and protect Plaintiff's constitutional rights from further deprivation. This is precisely the circumstance Hamilton anticipated in Federalist No. 80: a case in which the state's own judicial apparatus has become the instrument of the deprivation, and the federal judiciary must intervene because no other institution can.

23. Hamilton, in *Federalist No. 78*, identified the precise standard by which the conduct of a judicial officer must be measured against the constitutional design: courts must exhibit "that inflexible and uniform adherence to the rights of the constitution, and of individuals, which we perceive to be indispensable in the courts of justice." Hamilton further warned that if courts

"should be disposed to exercise will instead of judgment, the consequence would equally be the substitution of their pleasure to that of the legislative body." Document 14 is the substitution of judicial will for constitutional law that Hamilton identified as the fundamental corruption of the judicial function. "Without this" inflexible adherence, Hamilton declared, "all the reservations of particular rights or privileges would amount to nothing." This Court is called upon to fulfill the role Hamilton assigned to the federal judiciary: to declare that an act of a subordinate state authority contrary to the Constitution is void, and to ensure that the constitutional rights of the individual are given practical effect.

24. Madison further addressed, in *Federalist No. 48*, whether written constitutional provisions alone are sufficient to maintain the separation of powers, and concluded that they are not—that the constitutional structure must be designed to actively resist encroachment by any branch upon the prerogatives of another. Document 14 illustrates this precise scenario: the written constitutional guarantees of the First, Fifth, Sixth, and Fourteenth Amendments were insufficient to prevent Judge Tolan from issuing an order that obliterated them. In *Federalist No. 51*, Madison articulated the structural remedy: "Ambition must be made to counteract ambition" and the constitutional design must "oblige [government] to control itself." The 42 U.S.C. § 1983 cause of action is the constitutional mechanism by which the federal system imposes the external structural check that parchment barriers cannot supply—the auxiliary precaution Madison declared necessary to prevent precisely the governmental self-aggrandizement this case presents.

## II. JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction). The claims arise under the Constitution of the United States and 42 U.S.C. § 1983.

26. Venue is proper in the Western District of Wisconsin pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Polk County, Wisconsin, which lies within the Western District of Wisconsin, and because the Defendants reside within this District.

27. Defendant Daniel Joseph Tolan is a natural person residing at 1728 Wilderness Hills Lane, Luck, Wisconsin 54853, and is sued in his individual and personal capacity for actions taken under color of state law that were so far beyond the bounds of legitimate judicial authority as to constitute the complete abrogation of Plaintiff's constitutional rights.

28. Defendant Sharon Jorgenson is a natural person believed to reside at 2059 250th Avenue, Luck, Wisconsin 54853, or alternatively at 1837 290th Avenue, Frederic, Wisconsin 54837, both locations within the Western District of Wisconsin, and is sued in her individual and personal capacity for actions taken under color of state law in failing to perform her mandatory, non-discretionary ministerial duty to receive, file, and docket Plaintiff's properly submitted filings.

## III. PARTIES

29. Plaintiff Mary Joanna Comer is a private citizen of the State of Wisconsin, residing at 852 Elmer Avenue, Amery, Wisconsin 54001. She is the defendant in the underlying state criminal matter, *State of Wisconsin v. Mary J. Comer*, Case No. 2026CF000023, Polk County Circuit Court. Plaintiff proceeds *in propria persona* with the assistance of her Constitutional Counsel of Choice, Thomas Edward Humphrey, 107 Middlesex Road, Apartment 5, Waltham, Massachusetts 02452.

30. Defendant Daniel Joseph Tolan is a judge of the Polk County Circuit Court, Branch 1, State of Wisconsin, residing at 1728 Wilderness Hills Lane, Luck, Wisconsin 54853. He is sued exclusively in his individual and personal capacity. Defendant acted under color of state law at all times relevant to this Complaint.

31. Defendant Sharon Jorgenson is the Clerk of Court for the Polk County Circuit Court, State of Wisconsin, residing at 2059 250th Avenue, Luck, Wisconsin 54853. She is sued exclusively in her individual and personal capacity. As Clerk of Court, Defendant Jorgenson bears an independent, non-discretionary ministerial duty to receive, file, and docket all documents properly submitted through Wisconsin's authorized eFiling system. The Clerk of Court is not a judicial officer and possesses no authority to exercise discretion over the acceptance or rejection of properly submitted filings. The ministerial duty to file is mandatory, not permissive. *Barr v. Matteo*, 360 U.S. 564 (1959); *Walthall v. United States*, 131 F.3d 1289 (9th Cir. 1997). Defendant Jorgenson acted under color of state law at all times relevant to this Complaint.

## IV. FACTUAL ALLEGATIONS

### A. The Underlying Criminal Charge and Its Evidentiary Foundation

32. Ms. Comer is a sixty-one-year-old woman who has never in her entire life been accused of, charged with, arrested for, or convicted of any criminal offense. She has no criminal history whatsoever. She has lived her life as a law-abiding citizen, a grandmother, and a member of her community without so much as a single encounter with the criminal justice system as a defendant—until now. This fact is of paramount significance. Just as courts routinely consider the absence of prior criminal history as a mitigating factor in sentencing, see *Wisconsin v. Gallion*, 2004 WI 42, ¶43, so too must this Court consider that the prosecution's theory requires this Court to believe that a woman with an unblemished record spanning six decades suddenly and without warning committed a violent sexual felony against a juvenile more than a foot taller and decades younger than her. The implausibility of this proposition is self-evident and will be demonstrated in exhaustive detail herein.

\* \* \*

**[REDACTED]**

\* \* \*

¶¶ ___–___ [Redacted pursuant to the work-product doctrine, Fed. R. Civ. P. 26(b)(3), and the deliberative investigative-material privilege. This section contains a comprehensive forensic analysis of the evidentiary foundation underlying the criminal charge in *State of Wisconsin v. Mary J. Comer*, Case No. 2026CF000023, Polk County Circuit Court, identifying no fewer than twenty-five (25) material inconsistencies, internal contradictions, irreconcilable factual impossibilities, physical implausibilities, anomalous instances of possession of secondhand knowledge without an identified source, fabricated accounts of purported law enforcement interactions unsupported by any official record, logically impossible chains of third-hand hearsay, and a discernible pattern of coordinated narrative manipulation — the cumulative effect of which renders the evidentiary foundation of the charge fundamentally unreliable and suggestive of prosecutorial reliance upon testimony that would not survive meaningful adversarial testing.

This section further contains confidential investigative referral memoranda and particularized recommendations directed to federal law enforcement and oversight authorities, including but not limited to the Federal Bureau of Investigation and the Office of Inspector General, United States Department of Justice. The detailed evidentiary analysis and investigative recommendations contained herein are withheld from the public filing to preserve the integrity of any resulting federal investigation, to prevent premature disclosure to adverse parties or interested non-parties who may have the opportunity and incentive to coordinate, fabricate, or destroy evidence, and to avoid

the irremediable prejudice that would result from alerting subjects and witnesses to the specific evidentiary deficiencies identified herein before investigators have had the opportunity to conduct independent examination.

Plaintiffs note that the presiding judicial officer in the underlying criminal proceeding, Defendant Judge Daniel Joseph Tolan, and the Clerk of Court, Defendant Sharon Jorgenson — both named as Defendants in this action in their individual capacities — retain administrative access to filings in this matter and, given the conduct alleged herein, cannot be regarded as disinterested parties with respect to the continued prosecution of Ms. Comer. The reasonable apprehension that these Defendants, or agents acting at their direction, may relay the substance of this analysis to the State of Wisconsin, the Polk County District Attorney's Office, or prosecution witnesses — whether directly, through informal ex parte channels, or through the coordinated docketing and information-sharing practices documented elsewhere in this Complaint — constitutes an independent and compelling basis for withholding this material from the public record.]

## B. The Suppression of Plaintiff's Defense

33. On February 27, 2026, Plaintiff and her Constitutional Counsel of Choice properly filed and electronically submitted six documents through the Wisconsin eFiling system, all of which the eFiling portal confirms as "Submitted." These documents include Plaintiff's Sworn Testimony establishing the complete consent defense under *State v. Lackershire*, 2007 WI 74; a Psychological and Legal Research Memorandum on Rape Trauma Syndrome; a Motion for Constitutional Counsel of Choice with supporting Memorandum; a Notice of Appearance; and a Request to Appear by Video.

34. At the March 2, 2026 Initial Appearance, Judge Tolan stated on the official court record: "CT addresses documents attempted to be filed for defendant who is not a party are not received. CT will not accept documents that are not filed by an attorney or from a nonparty." This statement constitutes a judicial admission—memorialized in the official record of a 40-year felony proceeding—that Judge Tolan willfully and deliberately refused to accept Plaintiff's constitutionally protected filings.

35. No written order was entered at the time of the March 2, 2026 Initial Appearance striking or rejecting any filing. No legal authority was cited. The refusal was unilateral, oral, and devoid of any formal judicial ruling identifying specific legal grounds.

**C. The Clerk of Court's Failure to Perform Her Ministerial Duty**

36. The failure to enter Plaintiff's six properly submitted documents into the official court record does not rest with Judge Tolan alone. Defendant Sharon Jorgenson, as Clerk of Court for the Polk County Circuit Court, bears an independent and non-discretionary ministerial duty to receive, file, and docket documents properly submitted through Wisconsin's authorized eFiling system. A clerk of court has no authority to exercise judicial discretion in determining whether a filing is legally sufficient or procedurally proper — that determination belongs exclusively to the court, and only after the document has been entered into the record. The ministerial duty to docket is triggered upon receipt of a properly submitted filing and is not subject to suspension, delay, or conditional withholding pending judicial review or approval.

37. The documented record now establishes, with specificity and precision, that Clerk Jorgenson did not merely fail to docket Plaintiff's filings — she affirmatively withheld them from the official court record for a period of six days, diverted them to Judge Tolan for extrajudicial review outside the docketing process, and then entered them onto the official docket

simultaneously with their striking pursuant to Document 14. Plaintiff's six documents were submitted through the Wisconsin eFiling system on February 27, 2026, and confirmed by the system as "Submitted." Under the mandatory ministerial duty applicable to the Clerk's office, these documents should have been received, filed, and entered on the official docket promptly upon receipt. They were not. The Wisconsin Circuit Court eFiling portal screenshot for Case No. 2026CF000023 (attached as part of Exhibit C) confirms that as of the date of capture, all six defense documents — "Defendant's Motion for Constitutional Counsel of Choice," "Memorandum in Support of Defendant's Motion," "Notice of Appearance," "Request to Appear by Video," "Sworn Testimony of Mary J. Comer," and "Psychological and Legal Research Memorandum" — displayed a status of "Submitted" with no filing date, while all prior documents in the case (Criminal Complaint, Summons, Electronic Filing Notice, Confidential Crime Victim Information, and Notice of Hearing) displayed specific filing dates. This differential treatment confirms that Plaintiff's six defense filings were received by the eFiling system but withheld from formal entry onto the court record.

38. The eFiling system's own email confirmations — attached hereto as Exhibit C and incorporated herein by reference — establish the precise moment at which the Clerk's office finally entered the documents onto the official docket. On March 5, 2026, at 11:03 AM, the Wisconsin Courts eFiling system transmitted an email notification to Plaintiff's email address (thykingdomcome1322@gmail.com) from WisconsinCourtsEFile@wicourts.gov confirming that "Defendant's Motion for Constitutional Counsel of Choice submitted electronically to the Polk County Circuit Court for case number 2026CF000023 (*State of Wisconsin vs. Mary J Comer*) was received and associated with the case." At 11:03 AM, "Memorandum in Support of Defendant's Motion for Constitution Counsel of Choice" was received and associated with the

case. At 11:04 AM, "Sworn Testimony of Mary J. Comer" was received and associated with the case. At 11:04 AM, "Psychological and Legal Research Memorandum" was received and associated with the case. At 11:04 AM, "Notice of Appearance of Constitutional Counsel of Choice - filed by nonparty filer Thomas Edward Humphrey" was received and associated with the case. At 11:04 AM, "Defendant's Request to Appear by Video" was received and associated with the case. Six documents, all submitted on February 27, 2026 — all entered onto the docket on March 5, 2026, in a burst of activity spanning approximately one minute. The mobile device notification screenshot (Exhibit C, Gmail notification panel captured at 11:08 AM on Thursday, March 5) independently corroborates all six email notifications arriving within the 11:03–11:04 AM window.

39. Five minutes later — at 11:09 AM on March 5, 2026 — the eFiling system transmitted two additional notifications: "Order to Appear Remotely DENIED" was "signed and associated with the case," and "Order" (Document 14) was "signed and associated with the case." The sequence is unmistakable: the Clerk's office entered all six of Plaintiff's defense filings onto the docket at 11:03–11:04 AM, and then, at 11:09 AM — within five minutes — filed the very Order that struck those filings, renamed them, banned all future filings and correspondence from Plaintiff's chosen counsel, and threatened contempt. The documents were not docketed and then subsequently stricken after independent judicial review. They were docketed and stricken in a single, coordinated administrative event. The filings were entered onto the record for the sole purpose of being immediately destroyed.

40. This sequence of events establishes that Plaintiff's six documents were withheld from the official court record from February 27, 2026, through March 5, 2026 — a period of six days. During this period, the documents were diverted to Judge Tolan for extrajudicial review outside

the docketing process, outside the adversarial framework, and without notice to Plaintiff or any opportunity to be heard. This extrajudicial review is confirmed by Judge Tolan's on-record statement at the March 2, 2026 Initial Appearance — five days after submission and three days before the documents appeared on the official docket — in which he announced his categorical refusal to accept the filings. Judge Tolan's awareness of the filings' existence and content at the March 2 hearing, when those filings had never been entered on the docket, establishes that the documents had been presented to him through a channel outside the official record. The only reasonable inference is that the Clerk's office — rather than performing its mandatory ministerial duty to docket the filings upon receipt — withheld them and provided them to Judge Tolan for private review, enabling the extrajudicial determination that preceded, and ultimately culminated in, Document 14.

41. Clerk Jorgenson's conduct constitutes not a single violation but a continuing sequence of independently actionable deprivations carried out in concert with Judge Tolan: (a) the initial withholding of six properly submitted documents from the official docket upon receipt on or about February 27, 2026, in violation of her mandatory ministerial duty — a withholding that could not have occurred without an understanding, whether express or tacit, between the Clerk's office and the Court that the filings were to be diverted rather than docketed; (b) the diversion of those documents to Judge Tolan for extrajudicial review outside the official docketing process, confirming direct coordination between the Clerk and the Judge in circumventing the adversarial framework; (c) the sustained withholding of those documents from the official record for six days, during which the March 2 Initial Appearance proceeded without any record of Plaintiff's defense filings — a proceeding at which Judge Tolan announced his refusal to accept filings he could only have known about through the Clerk's extrajudicial transmission; (d) the coordinated

entry of all six documents onto the docket on March 5, 2026, at 11:03–11:04 AM, followed five minutes later at 11:09 AM by the filing of Document 14 — an execution sequence so precisely synchronized that it could only have been the product of prior arrangement between the Court and the Clerk's office; and (e) the execution of Document 14's directive to rename each of the six documents from their substantive titles — including "Sworn Testimony of Mary J. Comer," "Psychological and Legal Research Memorandum," "Defendant's Motion for Constitutional Counsel of Choice," "Memorandum in Support of Defendant's Motion for Constitution Counsel of Choice," "Notice of Appearance of Constitutional Counsel of Choice - filed by nonparty filer Thomas Edward Humphrey," and "Defendant's Request to Appear by Video" — to the generic label "Third-party filing Stricken by the Court." The physical act of entering the electronic docket system, locating each of Plaintiff's six filings by their substantive document names, and manually replacing each name with a generic label designed to conceal their content is not a passive administrative function. It is an affirmative, deliberate act of records alteration, performed six times in succession, that required knowing participation in the suppression of a criminal defendant's defense. The precision and choreography of this entire sequence — from the six-day withholding, to the extrajudicial transmission, to the synchronized docketing-and-striking, to the systematic renaming — is not consistent with two officials acting independently. It is consistent only with a coordinated plan between Judge Tolan and Clerk Jorgenson to suppress, destroy, and conceal a criminal defendant's entire defense from the official record.

42. The ongoing and unremedied nature of this coordinated suppression is confirmed by the Wisconsin Circuit Court Access (CCAP) public case detail page for Case No. 2026CF000023, captured on March 16, 2026 (attached hereto as Exhibit D and incorporated herein by reference). The CCAP docket — the authoritative public record of the proceedings — continues to display

all six of Plaintiff's defense filings under the sanitized label "Other papers" with the additional text "Third-party filing Stricken by the Court." The substantive titles of the filings — "Sworn Testimony of Mary J. Comer," "Psychological and Legal Research Memorandum," "Defendant's Motion for Constitutional Counsel of Choice," "Memorandum in Support of Defendant's Motion," "Notice of Appearance of Constitutional Counsel of Choice," and "Defendant's Request to Appear by Video" — have been permanently erased from the public record. Any reviewing court, appellate tribunal, journalist, or member of the public examining this docket would have no way of knowing that the stricken "other papers" included a criminal defendant's sworn testimony, her motion for constitutional counsel, and the complete legal defense prepared on her behalf. The CCAP record also confirms that Judge Tolan remains the responsible official and is currently scheduled to preside over the April 6, 2026 preliminary hearing — the very judge who has already demonstrated, through documented acts, his categorical refusal to permit Plaintiff's chosen counsel to participate in any capacity and his willingness to destroy the defense record. The documented evidence, taken together, establishes that Judge Tolan and Clerk Jorgenson acted in concert, pursuant to a common plan and understanding, to deprive Plaintiff of her constitutional rights under color of state law. Their coordinated conduct constitutes a conspiracy against rights in violation of 18 U.S.C. § 241 and a joint deprivation of rights under 42 U.S.C. § 1983. The conspiracy operated through a division of roles — the Judge providing the extrajudicial directive and the formal Order, the Clerk providing the administrative machinery of suppression — but it was a single, unified course of conduct directed at a single objective: the complete elimination of a criminal defendant's defense from the official record of a Class C felony proceeding. The Clerk's knowing execution of each step in the sequence — withholding, diverting, coordinating, docketing, striking, and renaming — was not the product of

inadvertence, independent judgment, or routine clerical processing. It was the product of an agreement with the presiding judge to suppress the constitutional rights of a person accused of a crime, and it resulted in the creation of a false, incomplete, and affirmatively altered official record that, for six critical days including the Initial Appearance, contained only the prosecution's version of events while the defendant's sworn testimony and complete legal defense were withheld — and which thereafter was deliberately sanitized to conceal the very existence of Plaintiff's defense filings from any reviewing court, appellate tribunal, or member of the public.

43. Clerk Jorgenson was personally served, by email to her official addresses (sharon.jorgenson@wicourts.gov and countyclerk@polkcountywi.gov), with a copy of Plaintiff's formal Complaint of Judicial Misconduct filed with the Wisconsin Judicial Commission on March 5, 2026 (Exhibit E). Plaintiff had already filed complaints with the FBI and the DOJ Civil Rights Division; the Judicial Commission complaint was prompted by the escalating conduct evidenced by Document 14 — the formal Order striking, renaming, and categorically banning Plaintiff's defense filings. The timeline is unambiguous: the Clerk's office executed the coordinated docketing-and-striking sequence at 11:03–11:09 AM Central Time; the Judicial Commission complaint was transmitted at 1:00 PM Central Time. The unlawful acts of record alteration — the six-day withholding, the coordinated entry and simultaneous striking, and the renaming of the filings — were performed before the Clerk received notice of the misconduct complaint. The evidentiary significance of the Judicial Commission complaint is therefore not that it preceded the unlawful acts, but that it establishes the point at which Clerk Jorgenson was placed on express, formal notice that her office's conduct was the subject of a judicial misconduct complaint and simultaneous federal investigation — and that despite this notice, the

altered record has never been corrected. The six defense filings remain stripped of their substantive titles and displayed under the generic label "Third-party filing Stricken by the Court" on the public CCAP docket (Exhibit D) as of the date of this Complaint. From March 5, 2026 forward, the Clerk's continued maintenance of the falsified record is not an act of inadvertence — it is a knowing choice to preserve a record alteration that was the subject of a formal complaint served on her personally, copied to the County Board Chair, the District Attorney, law enforcement, and the state's own judicial oversight body.

**D. The Written Order Confirming and Escalating the Deprivation (Document 14)**

44. On March 4, 2026, Judge Tolan signed a formal written Order (Document 14), filed March 5, 2026, that confirmed, memorialized, and substantially escalated the constitutional deprivations initiated at the March 2, 2026 Initial Appearance. A true and correct copy of this Order is attached hereto as Exhibit A.

45. Document 14 orders the following: (1) that the documents filed by Thomas Edward Humphrey be stricken; (2) that no further filings shall be made by anyone other than the named parties or a licensed attorney; (3) that no one other than the named parties or a licensed attorney shall mail, email, fax, or deliver any filings or correspondence to the Court; (4) that all non-party filings are stricken and their document names changed to "Third-party filing Stricken by the Court"; and (5) that violations may be punishable as Contempt of Court.

46. Document 14 transforms Judge Tolan's initial oral refusal into a permanent, prospective prohibition with escalating consequences. The Order is notable for the following features that bear directly on the constitutional claims herein:

(a) **Retroactive Destruction of the Record**: The Order does not merely reject the filings—it directs that their document names be changed to "Third-party filing Stricken

by the Court," thereby obliterating the substantive content of Plaintiff's defense from the public docket. This is not the customary striking of a document, which typically leaves the document visible on the docket with a notation that it has been stricken. This is the affirmative destruction of a criminal defendant's sworn testimony and legal defense from the official record.

(b) **Prospective Ban on All Filings and Correspondence:** The Order prohibits not only future filings but all forms of correspondence—including mail, email, fax, and hand delivery—from anyone other than the named parties or a licensed attorney. This sweeping prohibition extends far beyond any legitimate regulation of unauthorized practice of law and constitutes a prior restraint on communication with the Court.

(c) **Contempt Threat as Chilling Effect:** The threat of contempt sanctions for violations of the Order operates as a direct deterrent against the exercise of constitutionally protected rights. A criminal defendant facing forty years' imprisonment is now additionally threatened with contempt if she seeks the assistance of her chosen advisor in preparing filings for her own defense.

(d) **Misapplication of Unauthorized Practice Statute:** The Order cites Wisconsin Statute § 757.30 as its authority. However, the unauthorized practice of law statute regulates the conduct of the non-lawyer—it does not authorize a court to strip a criminal defendant of her constitutional right to file documents in her own defense merely because those documents were prepared with the assistance of an unlicensed advisor. The proper remedy for unauthorized practice, if any, would be a referral to the Office of Lawyer Regulation—not the categorical exclusion of a defendant's sworn testimony from the record of a felony proceeding.

(e) **Direct Contradiction of the State's Own eFiling System**: Document 14's categorical prohibition on non-party filings stands in direct and irreconcilable conflict with the Wisconsin Court System's own eFiling platform, which — as of its most recent update on February 25, 2026, just two days before Plaintiff's filings were submitted — expressly authorizes and provides detailed instructions for non-party document filing on existing cases (Exhibit B). The State of Wisconsin cannot simultaneously maintain a public electronic filing system that invites, instructs, and processes non-party filings while permitting a circuit court judge to issue an order categorically prohibiting the very filings the system was designed to accept. This contradiction demonstrates that Document 14 is not grounded in any systemic policy, statutory requirement, or administrative rule — it is the product of one judge's unilateral determination, imposed in defiance of the State's own established procedures.

(f) **Coordinated Filing and Simultaneous Striking**: The execution of Document 14 was not a routine administrative act. The eFiling system's own email confirmations (Exhibit C) establish that the Clerk's office entered all six of Plaintiff's defense filings onto the docket at 11:03–11:04 AM on March 5, 2026, and then filed Document 14 at 11:09 AM — five minutes later — simultaneously striking the very filings just entered. This coordinated sequence demonstrates that the filings were entered onto the record for the sole and express purpose of being immediately destroyed, and that the Clerk's office executed this choreographed suppression with full knowledge of the nature and effect of its actions.

(g) **Continuing Public Record Alteration**: The effects of Document 14 are not confined to the moment of its execution. The Wisconsin Circuit Court Access (CCAP) public case

detail page for Case No. 2026CF000023 — the authoritative public record available to any reviewing court, appellate tribunal, or member of the public — continues to display all six of Plaintiff's defense filings under the generic label "Third-party filing Stricken by the Court" (Exhibit D). The substantive titles of the filings have been permanently replaced. The public record of a Class C felony prosecution has been deliberately altered to conceal the existence and content of a criminal defendant's sworn testimony, constitutional motions, and complete legal defense — and this alteration remains in effect and unremedied as of the date of this Complaint.

47. The consequence of Document 14 is that the official court record in Case No. 2026CF000023—a Class C felony proceeding carrying up to forty years' imprisonment—now contains only the prosecution's version of events. Plaintiff's sworn testimony, her legal memoranda, her motion for constitutional counsel, and all supporting documents have been stricken, renamed, and effectively erased. The adversarial system upon which American criminal justice depends has been replaced with a one-sided prosecution in which the defendant is forbidden from presenting her defense.

## V. CONSTITUTIONAL VIOLATIONS AND CAUSES OF ACTION

### COUNT I: Deprivation of Sixth Amendment Right to Assistance of Counsel of Choice (42 U.S.C. § 1983)

48. Plaintiff incorporates all preceding paragraphs by reference. The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right to self-representation necessarily includes the right to assistance from a trusted advisor. *Faretta v. California*, 422 U.S. 806, 819–20 (1975). The Judiciary Act of 1789, 1 Stat. 92, § 35, expressly provides that parties may appear

"personally or by the assistance of such counsel or attorneys at law," drawing a deliberate distinction between licensed attorneys and unlicensed counsel—a distinction enacted by the First Congress, many of whose members were themselves Framers. This distinction reflects the founding generation's understanding, articulated by Hamilton in *Federalist No. 80*, that there must "always be a constitutional method of giving efficacy to constitutional provisions." The right to assistance of counsel—whether from a licensed attorney or a trusted advisor—is precisely such a constitutional method: it is the mechanism by which a criminal defendant's constitutional rights are transformed from abstract guarantees into practical protections. Document 14's elimination of this mechanism does not merely violate the Sixth Amendment—it eliminates, in Hamilton's formulation, the constitutional efficacy of every other right the defendant possesses. Judge Tolan's oral refusal on March 2, 2026, followed by the formal written Order of March 4, 2026 (Document 14), directly and permanently extinguished this fundamental right.

## COUNT II: Deprivation of Fifth and Fourteenth Amendment Due Process Rights (42 U.S.C. § 1983)

49. Plaintiff incorporates all preceding paragraphs by reference. Due process requires, at an irreducible minimum, that a criminal defendant facing up to forty years in prison be permitted to file documents in her own defense, have those documents received and entered into the official record, present her legal arguments, and create an appellate record. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950). Document 14 not only eliminates all of these guarantees but affirmatively destroys the record of Plaintiff's defense by renaming and striking her filings.

50. The due process violations set forth in Count II are independently corroborated by Defendant Tolan's violations of the binding obligations imposed by Wisconsin Supreme Court Rules SCR 60.04(1)(d) and SCR 60.04(1)(hm), which are relevant as evidence of willfulness and the absence of legitimate judicial justification. SCR 60.04(1)(hm)—a binding rule of the Wisconsin Code of Judicial Conduct—expressly provides that "[a] judge shall uphold and apply the law and shall perform all duties of judicial office fairly and impartially" and that "[a] judge shall also afford to every person who has a legal interest in a proceeding, or to that person's lawyer, the right to be heard according to the law." This provision codifies, at the level of mandatory judicial obligation, the constitutional right to be heard that lies at the core of procedural due process. *See Mathews v. Eldridge*, 424 U.S. 319 (1976). Judge Tolan's issuance of Document 14—which struck Plaintiff's sworn testimony, banned her chosen advisor from future participation, renamed her filings to conceal their content, and threatened contempt for any future exercise of the rights at issue—obliterated the right to be heard that SCR 60.04(1)(hm) imposes as a mandatory judicial duty. SCR 60.04(1)(d) further requires a judge to "act so that the judge's attitude, manner or tone toward counsel or witnesses does not prevent the proper presentation of the cause or the ascertainment of the truth." Document 14 does not merely impede proper presentation—it eliminates it entirely, replacing Plaintiff's sworn testimony and legal defense on the official docket with a generic label designed to conceal their existence.

## COUNT III: Deprivation of Fourteenth Amendment Equal Protection Rights (42 U.S.C. § 1983)

51. Plaintiff incorporates all preceding paragraphs by reference. The Equal Protection Clause forbids class legislation—the application of a special rule to a particular person not applied to all persons equally. *Gulf, C. & S.F. Ry. Co. v. Ellis*, 165 U.S. 150 (1897); *Yick Wo v. Hopkins*, 118

U.S. 356 (1886). Document 14 applies a rule specific to Ms. Comer: her documents will not be accepted, and will be affirmatively stricken and renamed, because her counsel is not a licensed attorney. No such rule was applied to the prosecution. This constitutes class legislation of the most dangerous kind.

52. The equal protection violation alleged in Count III is further supported by Defendant Tolan's violation of the mandatory anti-bias obligation imposed by SCR 60.04(1)(e) of the Wisconsin Code of Judicial Conduct. That rule provides: "[A] judge shall perform judicial duties without bias or prejudice" and "[a] judge may not, in the performance of judicial duties, by words or conduct, manifest bias or prejudice." The application of Document 14 exclusively to Plaintiff's filings—while no corresponding restriction was imposed on the prosecution—constitutes differential treatment that the Equal Protection Clause forbids and that SCR 60.04(1)(e) independently prohibits. No judicial discretion exists to impose on a criminal defendant a categorical prohibition that is not simultaneously applicable to the prosecution. *Yick Wo*, 118 U.S. at 370.

**COUNT IV: Deprivation of First Amendment Right to Petition (42 U.S.C. § 1983)**

53. Plaintiff incorporates all preceding paragraphs by reference. The First Amendment protects the right to petition the Government for redress of grievances. Legal filings are the quintessential exercise of this right. *NAACP v. Button*, 371 U.S. 415 (1963). Document 14's prospective ban on filings and correspondence, enforced by the threat of contempt, operates as a prior restraint on Plaintiff's right to petition—the very essence of a First Amendment violation.

54. Document 14's contempt threat as a mechanism for chilling the exercise of constitutionally protected petition rights is further illuminated by SCR 60.04(1)(j) of the Wisconsin Code of Judicial Conduct, which provides that "[a] judge may not, while a proceeding is pending or

impending in any court, make any public comment that may reasonably be expected to affect the outcome or impair the fairness of the proceeding." The threat of contempt sanctions against a criminal defendant for the exercise of her constitutional right to file documents in her own defense is precisely the species of judicial conduct that impairs the fairness of a proceeding. A court order that chills a criminal defendant's exercise of First Amendment petition rights— through the threatened imposition of criminal contempt—is not a legitimate exercise of judicial authority. It is the weaponization of the contempt power against the constitutional rights of the very party over whom the court presides.

**COUNT V: Deprivation of Sixth Amendment Right to Present a Defense (42 U.S.C. § 1983)**

55. Plaintiff incorporates all preceding paragraphs by reference. The Sixth Amendment guarantees the right to present witnesses and evidence in one's defense. The Wisconsin Supreme Court recognized in *State v. Lackershire*, 2007 WI 74, 301 Wis. 2d 418, that consent is a complete defense to the charge under § 948.02(2). By refusing to accept and then affirmatively striking Plaintiff's Sworn Testimony—the foundational document of this complete defense— Judge Tolan has suppressed the single most important piece of evidence bearing on the only legally recognized defense available to Plaintiff.

**COUNT VI: Violation of the Separation of Powers Doctrine**

56. Plaintiff incorporates all preceding paragraphs by reference. Judge Tolan's pronouncement— first oral, then formalized in Document 14—constitutes creation of a new rule by judicial fiat, violating the separation of powers. Article I vests all legislative power in Congress. Article IV, Section 4 guarantees a Republican Form of Government. When a judge creates a categorical rule with no statutory basis, he assumes the legislator's role. As the Supreme Court held in *Yick Wo v.*

*Hopkins*, 118 U.S. 356, 370 (1886): Sovereignty itself remains with the people. The Supreme

Court warned in *Olmstead v. United States*, 277 U.S. 438, 485 (1928) (Brandeis, J., dissenting):

If the Government becomes a lawbreaker, it breeds contempt for law.

**COUNT VII: Deprivation of Constitutional Rights by Clerk of Court Sharon Jorgenson (42 U.S.C. § 1983)**

57. Plaintiff incorporates all preceding paragraphs by reference. Defendant Sharon Jorgenson, acting under color of state law in her capacity as Clerk of Court for the Polk County Circuit Court, deprived Plaintiff of her rights secured by the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution by failing to perform her mandatory, non-discretionary ministerial duty to receive, file, and docket six documents properly submitted through Wisconsin's authorized eFiling system in Case No. 2026CF000023.

58. Clerk Jorgenson's conduct was not a judicial act entitled to absolute judicial immunity. The duty to receive and docket properly submitted filings is a ministerial function, not a judicial one. Clerks of court do not enjoy absolute immunity for the performance or non-performance of ministerial duties. *Forrester v. White*, 484 U.S. 219 (1988) (distinguishing judicial acts from administrative acts); *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993). The failure to file properly submitted documents is not a discretionary judicial function—it is the failure to perform a mandatory administrative duty.

59. Clerk Jorgenson is not entitled to qualified immunity because the right of a criminal defendant to have properly submitted filings received and entered into the official court record is clearly established under the First, Fifth, Sixth, and Fourteenth Amendments. No reasonable clerk of court could conclude that refusing to docket a criminal defendant's sworn testimony and defense filings in a 40-year felony proceeding is constitutionally permissible.

60. To the extent that Clerk Jorgenson acted in coordination with Judge Tolan to exclude Plaintiff's filings from the record, her conduct additionally supports the conspiracy allegations under 18 U.S.C. § 241 set forth in Part V of this Complaint.

## COUNT VIII: CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS 42 U.S.C. § 1983 — Against All Defendants

61. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

62. At all times relevant to this Complaint, Defendants Judge Daniel J. Tolan and Clerk of Court Sharon E. Jorgenson were persons acting under color of state law within the meaning of 42 U.S.C. § 1983.

63. The documented record establishes that Defendants Tolan and Jorgenson reached an agreement, whether express or tacit, to deprive Plaintiff Mary Joanna Comer of her rights under the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. The agreement was formed no later than February 27, 2026 — the date on which Plaintiff's six defense documents were submitted through the Wisconsin eFiling system and the Clerk's office, rather than performing its mandatory ministerial duty to docket the filings upon receipt, withheld them from the official record and diverted them to Judge Tolan for extrajudicial review outside the docketing process, outside the adversarial framework, and without notice to Plaintiff or any opportunity to be heard.

64. The conspiracy operated through a deliberate division of roles. Judge Tolan provided the judicial authority — the extrajudicial directive to withhold the filings, the on-record announcement at the March 2, 2026 Initial Appearance of his categorical refusal to accept them, and the formal written Order (Document 14, signed March 4, 2026) striking, renaming, and

categorically banning the filings and all future non-party filings and correspondence. Clerk Jorgenson provided the administrative machinery of suppression — the six-day withholding of the filings from the official docket, the diversion of the documents to the Judge for private review, the precisely coordinated entry of all six filings onto the docket at 11:03–11:04 AM on March 5, 2026, followed five minutes later at 11:09 AM by the filing of Document 14, and the systematic renaming of each filing from its substantive title to the generic label "Third-party filing Stricken by the Court."

65. The conspiracy was directed at a single objective: the complete elimination of a criminal defendant's entire defense — including her sworn testimony, her motion for constitutional counsel, her legal memoranda, and the notice of appearance of her Constitutional Counsel of Choice — from the official record of a Class C felony proceeding. The conspiracy succeeded. For six critical days, including the March 2, 2026 Initial Appearance, the official court record contained only the prosecution's version of events while Plaintiff's complete defense was withheld. Thereafter, the defense filings were entered onto the docket for the sole purpose of being immediately stricken, and their substantive titles were permanently replaced with a generic label designed to conceal their content from any reviewing court, appellate tribunal, or member of the public.

66. The overt acts performed in furtherance of this conspiracy include, but are not limited to: (a) the Clerk's withholding of six properly submitted defense filings from the official docket from February 27 through March 5, 2026; (b) the Clerk's diversion of those filings to Judge Tolan for extrajudicial review; (c) Judge Tolan's on-record announcement at the March 2 Initial Appearance of his refusal to accept filings that had never appeared on the docket — confirming his receipt of the documents through the Clerk's extrajudicial transmission; (d) Judge Tolan's

signing of Document 14 on March 4, 2026; (e) the Clerk's coordinated entry of all six filings onto the docket at 11:03–11:04 AM on March 5, 2026, followed by the filing of Document 14 at 11:09 AM; (f) the Clerk's systematic renaming of all six filings to conceal their content; and (g) the continued maintenance of the falsified record on the CCAP public docket as of the date of this Complaint (Exhibit D).

67. Each overt act caused direct and continuing injury to Plaintiff's constitutionally protected rights, including but not limited to: the right to present a defense; the right to assistance of counsel of choice; the right of access to the courts; the right to due process; and the right to a fair and impartial tribunal. The conspiracy and its effects are ongoing: the altered record has never been corrected, Judge Tolan remains assigned to the case, and the April 6, 2026 preliminary hearing is scheduled before the very judge who conspired to destroy Plaintiff's defense.

68. The conduct of Defendants Tolan and Jorgenson, acting in concert, additionally constitutes a conspiracy against rights as described in 18 U.S.C. § 241, which makes it unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person in the free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States. Although § 241 is a criminal statute enforceable by the United States, Plaintiff invokes it here to place this Court and the Department of Justice on notice that the coordinated conduct of these state officials meets the elements of a federal criminal conspiracy against constitutional rights, and to support Plaintiff's request for referral to the appropriate federal authorities for investigation and prosecution.

69. As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered and continues to suffer deprivation of her fundamental constitutional rights. Defendants are jointly

and severally liable for all damages arising from the conspiracy, including compensatory damages, punitive damages, and reasonable costs and fees pursuant to 42 U.S.C. § 1988.

## VI. ABSOLUTE JUDICIAL IMMUNITY DOES NOT APPLY TO DEFENDANT TOLAN; QUALIFIED IMMUNITY HAS BEEN INDEPENDENTLY FORFEITED

### A. Absolute Judicial Immunity Does Not Shield Defendant Tolan's Conduct

70. Absolute judicial immunity shields judges from civil liability for acts performed in a judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978). However, the Supreme Court has made clear that this immunity "is not a ticket for lawless judicial behavior." *Id.* The doctrine applies only where two conditions are met: the challenged act must be (1) a function normally performed by a judge, and (2) performed within the judge's jurisdiction or not in the clear absence of all jurisdiction. *Stump*, 435 U.S. at 360–62. Where either condition is absent, absolute immunity does not attach.

71. The Supreme Court has consistently distinguished between judicial acts—which enjoy absolute immunity—and administrative, legislative, or executive acts performed by judges—which do not. In *Forrester v. White*, 484 U.S. 219, 229 (1988), the Court held that "the nature of the function performed, not the identity of the actor who performed it" determines whether absolute immunity applies.

### 1. Document 14 Constitutes Legislative Action, Not Judicial Adjudication

72. The challenged conduct at the center of this action is not an erroneous ruling on a pending motion. Judge Tolan did not adjudicate the merits of a filing, deny a motion after briefing, or exercise discretion in the resolution of a disputed legal question. Instead, Judge Tolan created a categorical rule of prospective application—first announced orally on March 2, 2026, and then

formalized in a written Order on March 4, 2026 (Document 14)—declaring that no filings shall be accepted from anyone other than the named parties or a licensed attorney, and that no correspondence of any kind shall be directed to the Court from any other person. This rule was not a response to a specific filing; it was a blanket prohibition governing all future conduct in the case, enforceable by contempt.

73. The creation of a rule of general prospective application is a legislative function, not a judicial one. Article I of the United States Constitution vests all legislative power in Congress; Article IV, Section 4 guarantees each state a Republican Form of Government. When a judge promulgates a categorical rule—without statutory authority, without briefing, without adversarial process, and with the coercive force of contempt—he exercises the legislative power to make law rather than the judicial power to interpret and apply it. This is precisely the species of conduct that *Forrester* holds is not entitled to absolute judicial immunity.

74. The founding generation understood the distinction between legislative and judicial power with precision. James Madison, in *Federalist No. 47*, declared that the accumulation of all powers—legislative, executive, and judiciary—in the same hands "may justly be pronounced the very definition of tyranny." Alexander Hamilton, in *Federalist No. 78*, drew the specific institutional consequence: a judge who exercises "will instead of judgment" does not act in a judicial capacity. Document 14 is the product of will, not judgment—it created a new rule for a new class of situations, prescribed a remedy untethered to any existing statute, and enforced that rule by contempt. Under the founding-era framework, this conduct belongs to the legislative and executive functions, not the judicial. The absolute immunity designed for the judicial function does not protect its usurpation.

75. The characterization of Document 14 as a legislative rather than judicial act is directly supported by the structure of Wisconsin Supreme Court Rule Chapter 60 itself. The Preamble to SCR Chapter 60 provides that the Code "applies to every aspect of judicial behavior except purely legal decisions" and that "[l]egal decisions made in the course of judicial duty on the record are subject solely to judicial review." This carve-out for "purely legal decisions" defines by negative implication the category of judicial acts entitled to absolute immunity: those made in the exercise of the judicial power to decide pending controversies on the basis of applicable law. Document 14 is not such a decision. It did not resolve a disputed legal question. It did not apply existing law to a specific set of facts. It created a prospective rule of general application, enforced by contempt, with no basis in any existing statute, rule, or constitutional provision.

76. Document 14 cites Wisconsin Statute § 757.30 as its sole legal authority. However, § 757.30 regulates the conduct of persons engaged in the unauthorized practice of law—it does not authorize a court to strip a criminal defendant of her right to file documents in her own defense, destroy her sworn testimony from the record, or impose a prior restraint on all future communication with the court. The proper remedy for any violation of § 757.30, if one occurred, would be a referral to the Office of Lawyer Regulation—not the obliteration of a defendant's entire defense in a Class C felony proceeding. Under *Federalist No. 81*, "the constitution ought to be preferred to the statute, the intention of the people to the intention of their agents." The federal court is the institutional mechanism by which the constitutional intentions of the people prevail over a state statute misapplied to extinguish fundamental rights.

## 2. The Alteration of Court Records Is an Administrative Act, Not a Judicial One

77. Document 14 orders that all stricken filings have their document names changed to "Third-party filing Stricken by the Court." This directive does not adjudicate any rights of the parties. It

is an administrative instruction to the Clerk's office regarding the management and labeling of records on the electronic docket. The act of renaming documents to obscure their substantive content is not a function normally performed by a judge in the adjudication of cases and controversies. It is the alteration of a public record, an administrative function that falls outside the scope of absolute judicial immunity under *Forrester*, 484 U.S. at 229, and *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36 (1993).

78. Courts routinely strike filings. The judicial act of striking a filing leaves the document visible on the docket with a notation that it has been stricken—the substance of the filing remains part of the record for appellate review and public inspection. Document 14 goes far beyond striking. It orders the affirmative destruction of the informational content of the stricken documents by renaming them with a generic label that conceals their nature from any reviewing court, appellate tribunal, or member of the public. This is not adjudication. This is records management directed toward the concealment of evidence—an administrative act entitled to no absolute immunity.

### 3. In the Alternative, Judge Tolan Acted in the Clear Absence of All Jurisdiction

79. Even if the Court were to characterize any of Judge Tolan's challenged acts as judicial in nature, absolute immunity is unavailable where a judge acts in the "clear absence of all jurisdiction." *Stump*, 435 U.S. at 356–57.

80. No court in the United States possesses the jurisdictional authority to order a criminal defendant not to present a defense. The right to present a defense is not a procedural courtesy that a trial court may revoke at will—it is a structural constitutional guarantee without which the adversarial system ceases to function. When Judge Tolan ordered that Plaintiff's sworn testimony be stricken and renamed, that her legal memoranda be destroyed from the record, that her chosen counsel be permanently barred from assisting with future filings, and that any attempt

to exercise these rights be punishable by contempt—he exercised a power that no court has ever possessed. The power to annihilate a criminal defendant's entire defense does not exist within the jurisdiction of any court, state or federal. Judge Tolan therefore acted in the clear absence of all jurisdiction with respect to these specific acts, and absolute immunity does not apply.

**B. Declaratory and Injunctive Relief Are Available Regardless of Immunity**

81. Even where absolute judicial immunity bars a claim for damages, it does not bar claims for declaratory or injunctive relief under 42 U.S.C. § 1983. *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). The Federal Courts Improvement Act of 1996 narrowed injunctive relief against judges to cases where "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Plaintiff seeks declaratory relief (Prayer for Relief ¶ B) declaring that Defendants' conduct violates the First, Fifth, Sixth, Ninth, and Fourteenth Amendments, as well as injunctive relief (Prayer for Relief ¶¶ C and D) ordering the restoration of Plaintiff's filings and the vacatur of Document 14. These claims proceed on an independent track that is wholly unaffected by any assertion of absolute judicial immunity.

**C. Qualified Immunity Has Been Independently Forfeited as to Both Defendants**

82. In the alternative, and to the extent any of Judge Tolan's challenged conduct is deemed judicial in nature, qualified immunity is independently unavailable. Qualified immunity shields a government official from civil liability only where the constitutional right allegedly violated was not "clearly established" at the time of the conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rights at issue in this action are not merely clearly established—they are foundational to the American system of justice.

83. The Sixth Amendment right to assistance of counsel has been clearly established since *Powell v. Alabama*, 287 U.S. 45 (1932). The right to present a defense has been clearly established since *Washington v. Texas*, 388 U.S. 14 (1967). The right to file documents in one's defense has been clearly established since *Bounds v. Smith*, 430 U.S. 817 (1977). The due process right to be heard has been clearly established since *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950). No reasonable jurist in 2026 could conclude that categorically refusing and then affirmatively striking a criminal defendant's filings in a 40-year felony proceeding—on the sole ground that her chosen advisor is not a licensed attorney—is constitutionally permissible.

84. Furthermore, the progression from oral refusal on March 2, 2026, to formal written Order on March 4, 2026 (Document 14), forecloses any defense of good faith or inadvertence. A judge who first announces an oral rule refusing a criminal defendant's filings, and then two days later issues a formal written order striking those filings, banning all future filings and correspondence from the defendant's chosen counsel, renaming the stricken documents to obscure their content, and threatening contempt for any attempt to exercise the rights at issue—has demonstrated a pattern of deliberate, escalating constitutional deprivation that is wholly incompatible with good faith. Qualified immunity is unavailable as a matter of law.

### D. Defendant Jorgenson's Claim to Qualified Immunity Is Independently Foreclosed

85. Defendant Sharon Jorgenson does not enjoy absolute judicial immunity. The duty to receive and docket properly submitted filings is a ministerial function, not a judicial one. *Forrester v. White*, 484 U.S. 219 (1988); *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993).

86. Defendant Jorgenson is not entitled to qualified immunity because the right of a criminal defendant to have properly submitted filings received and entered into the official court record is

clearly established. No reasonable clerk of court could conclude that refusing to docket a criminal defendant's sworn testimony and defense filings in a 40-year felony proceeding is constitutionally permissible.

87. To the extent that Clerk Jorgenson executed the directive in Document 14 to rename the stricken filings, she participated in the affirmative alteration of a public record. This is a ministerial act devoid of any discretionary or judicial character, entitled to no immunity of any kind.

88. To the extent that Clerk Jorgenson acted in coordination with Judge Tolan to exclude Plaintiff's filings from the record, her conduct additionally supports the conspiracy allegations under 18 U.S.C. § 241 set forth in Part V of this Complaint.

## VII. THE DOCUMENTED RECORD ESTABLISHES CRIMINAL INTENT AS A MATTER OF LAW
### (Mens Rea Analysis)

### A. The Legal Standard: Mens Rea in Federal Civil Rights and Criminal Statutes

89. Criminal liability under federal civil rights statutes requires proof that the defendant acted with a culpable mental state—*mens rea*, or "guilty mind." The federal criminal offenses enumerated in Part V of this Complaint each require proof of willfulness, knowledge, or deliberate intent. Specifically, 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law) requires that the defendant acted "willfully"—that is, with the specific intent to deprive a person of a constitutional right. *Screws v. United States*, 325 U.S. 91, 101–04 (1945). The willfulness element requires proof that the defendant acted with a "bad purpose" to disobey or disregard the law—not merely that the defendant made an error of judgment. *United States v. Lanier*, 520 U.S. 259, 266 (1997).

90. Similarly, 18 U.S.C. § 1512(c)(2) (Obstruction of an Official Proceeding) requires proof of "corrupt" intent. 18 U.S.C. § 1519 (Destruction, Alteration, or Falsification of Records) requires proof that the defendant acted "knowingly."

91. Plaintiff submits that the documented record in this case does not merely support an inference of criminal intent—it establishes criminal intent at every recognized level of *mens rea* through a pattern of deliberate, escalating, and premeditated conduct that forecloses any innocent explanation.

**B. Purposeful Intent: Defendant Tolan Consciously Desired to Suppress Plaintiff's Defense**

92. The highest level of criminal culpability—purposeful or intentional conduct—requires proof that the defendant consciously desired to bring about a specific result. The documented record establishes purposeful intent through the following sequence of deliberate acts:

93. **The Oral Announcement of March 2, 2026.** At the Initial Appearance in a Class C felony proceeding carrying up to forty years' imprisonment, Judge Tolan stated on the official court record: "CT will not accept documents that are not filed by an attorney or from a nonparty." This was not an incidental remark. It was a categorical pronouncement, made in open court and memorialized in the official record, announcing a rule whose specific and immediate effect was to exclude Plaintiff's sworn testimony and entire defense from the proceedings.

94. **The Two-Day Interval Between Oral Refusal and Written Order.** Judge Tolan did not issue Document 14 in the heat of the moment or contemporaneously with the Initial Appearance. Two full days elapsed between the oral refusal of March 2, 2026, and the signing of the formal written Order on March 4, 2026. During this interval, Judge Tolan had ample opportunity to reconsider, consult legal authority, seek guidance, or reverse course. Instead, he used the interval

to draft, review, and sign a formal written order that confirmed, expanded, and escalated every element of the initial deprivation. This is premeditation in its most literal sense.

95. **The Escalation from Refusal to Destruction.** The oral refusal of March 2, 2026, merely declined to accept Plaintiff's filings. Document 14 went dramatically further: it ordered the filings stricken, their document names changed, all future filings and correspondence banned, and violations made punishable by contempt. Each escalation represents a distinct volitional act. A judge who inadvertently makes an error does not, two days later, issue a formal order amplifying that error in four distinct dimensions.

96. **The Specificity of the Record Alteration.** Document 14 does not merely order that the filings be stricken. It orders that the document names themselves be changed to a generic label. This directive is targeted with surgical precision at the informational content of the docket. The purpose is unmistakable: to ensure that any reviewing court, appellate tribunal, or member of the public who examines the docket will not see that Plaintiff filed "Sworn Testimony," "Psychological and Legal Research Memorandum on Rape Trauma Syndrome," "Motion for Constitutional Counsel of Choice," or any other substantive defense document. This is concealment by design.

## C. Knowing Conduct: Defendant Tolan Was Aware His Actions Would Deprive Plaintiff of Constitutional Rights

97. Even if this Court were to conclude that Judge Tolan did not consciously desire the suppression of Plaintiff's defense (a proposition the record refutes), the documented facts establish beyond any reasonable dispute that he knew his actions would produce that result.

98. Judge Tolan is a sitting circuit court judge. He is presumed to know the law. *Atkins v. Parker*, 472 U.S. 115, 130 (1985). He is presumed to know that the Sixth Amendment guarantees a

criminal defendant the right to assistance of counsel. He is presumed to know that due process requires that a criminal defendant be permitted to file documents in her own defense. He is presumed to know that striking a defendant's sworn testimony from the record in a felony proceeding will deprive that defendant of her ability to present a complete defense.

99. The presumption of legal knowledge applicable to Judge Tolan extends specifically to the obligations imposed by Wisconsin Supreme Court Rule Chapter 60, the Code of Judicial Conduct. The Preamble to SCR Chapter 60 provides that "[f]or a judge's conduct to constitute a violation of a rule, the judge must have known or reasonably should have known the facts giving rise to the violation." Judge Tolan, as a sitting circuit court judge, is presumed to know the requirements of SCR 60.02, SCR 60.03(1), SCR 60.04(1)(b), and SCR 60.04(1)(hm). His conduct violated each of these mandatory obligations. A judge who violates the mandatory obligations of the Code of Judicial Conduct—obligations he is presumed by law to know— cannot credibly claim that he was unaware that his conduct would deprive a criminal defendant of her constitutional rights.

100. The on-record statement of March 2, 2026, confirms actual knowledge. Judge Tolan identified the filings with specificity—documents "not filed by an attorney or from a nonparty"—and announced their categorical exclusion. This statement demonstrates that Judge Tolan knew exactly what he was refusing and knew precisely who would be harmed.

101. Document 14 further confirms knowing conduct through its citation of Wisconsin Statute § 757.30. By invoking a specific statutory provision, Judge Tolan demonstrated that he made a deliberate legal determination—not an inadvertent administrative decision—to prioritize a state regulatory statute over the constitutional rights of a criminal defendant.

102. The knowing character of Defendant Tolan's conduct is further established by the publicly available and readily ascertainable fact that the Wisconsin Court System's own eFiling platform — the system through which Plaintiff's filings were submitted and confirmed — expressly authorizes non-party filings and was updated with detailed instructions for non-party filers on February 25, 2026, just two days before Plaintiff's submissions (Exhibit B). A sitting circuit court judge is presumed to be aware of the filing systems and procedures operative in his own court. A judge who invokes § 757.30 to categorically prohibit filings that the State's own electronic filing infrastructure is specifically designed and currently maintained to accept cannot credibly claim that he was unaware of the constitutional implications of his actions. The eFiling system's express authorization of non-party filings eliminates the last conceivable basis for a good-faith belief that Document 14 was consistent with existing law, procedure, or policy. Moreover, the six-day withholding of Plaintiff's filings from the official docket — during which the documents were diverted to Judge Tolan for extrajudicial review and a formal written Order was drafted to destroy them — confirms that Document 14 was not a spontaneous judicial ruling but the product of deliberate, premeditated coordination between the Court and the Clerk's office to suppress a criminal defendant's defense.

103. The evidence of Defendant Tolan's mens rea is not confined to his individual knowledge and intent — it extends to his knowing participation in a coordinated scheme with Clerk Jorgenson to suppress Plaintiff's defense. Judge Tolan's on-record statement at the March 2, 2026 Initial Appearance — in which he announced his categorical refusal to accept filings that had never been entered on the official docket — is not merely evidence of extrajudicial review. It is direct evidence of his participation in the conspiracy: he could not have known about filings that did not appear on the docket unless the Clerk's office had transmitted them to him outside

the official record, and his announcement of a predetermined decision to reject them confirms that the extrajudicial review was not passive receipt but active coordination. The signing of Document 14 on March 4, 2026 — a comprehensive Order that not only struck the filings but directed their renaming, categorically banned all future non-party filings and correspondence, and threatened contempt — was not a spontaneous judicial act. It was the formal memorialization of a plan that had already been set in motion through the Clerk's withholding, the extrajudicial transmission, and the March 2 announcement. Judge Tolan signed Document 14 knowing that the Clerk's office would execute its directives precisely as written — because the Clerk's office had already demonstrated, through six days of coordinated withholding, its willingness and capacity to carry out his extrajudicial directives. The mens rea required for § 1983 liability — and for conspiracy liability specifically — is satisfied: Defendant Tolan acted with the purpose of depriving Plaintiff of her constitutional rights, through a coordinated agreement with a co-defendant who provided the administrative means to accomplish the deprivation.

## D. Reckless Disregard: Defendant Tolan Consciously Disregarded a Substantial and Unjustifiable Risk of Constitutional Harm

104. The risk of constitutional harm from Document 14 was not subtle, theoretical, or requiring sophisticated legal analysis to identify. The risk was obvious on the face of the Order itself. Any judge reviewing an order that strikes a criminal defendant's sworn testimony, bans her chosen counsel from future participation, renames her filings, and threatens contempt would immediately recognize the constitutional implications. The risk was also entirely unjustifiable. The constitutionally permissible remedy would be a referral to the Office of Lawyer Regulation—not the destruction of a criminal defendant's entire defense. The Supreme Court has

held that "reckless or callous indifference to the federally protected rights of others" is sufficient to support an award of punitive damages in a § 1983 action. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

## E. Gross Negligence: Even Under the Lowest Standard of Culpability, Defendant Tolan's Conduct Is Indefensible

105. A reasonable jurist in 2026—aware of the Sixth Amendment right to assistance of counsel established in *Powell v. Alabama*, 287 U.S. 45 (1932); the right to self-representation and chosen assistance recognized in *Faretta v. California*, 422 U.S. 806 (1975); the due process right to be heard established in *Mullane*, 339 U.S. 306; and the right to present a defense under *Washington v. Texas*, 388 U.S. 14 (1967)—would have recognized that categorically refusing a criminal defendant's filings, striking her sworn testimony, banning her chosen advisor, and threatening contempt for the exercise of constitutional rights posed an obvious risk of constitutional deprivation. These are among the most fundamental guarantees in American constitutional law.

## F. The Cumulative Pattern: Each Act Independently Establishes Intent; Together They Foreclose Every Innocent Explanation

106. The significance of the *mens rea* analysis is not limited to any single act. It is the cumulative pattern of conduct that eliminates any possibility of innocent explanation:

(a) The oral refusal of March 2, 2026, standing alone, might conceivably be characterized as an impulsive ruling—though its categorical language militates against such a characterization.

(b) The two-day interval between the oral refusal and Document 14 eliminates impulsiveness. The passage of time converts what might have been a momentary error into a deliberate, considered decision.

(c) The escalation from passive refusal to active destruction eliminates inadvertence. An inadvertent error is corrected upon reflection, not amplified in four dimensions.

(d) The specificity of the renaming directive eliminates any characterization of the conduct as a routine procedural ruling.

(e) The contempt threat eliminates any claim that Judge Tolan was merely exercising administrative discretion.

107. Taken together, these five elements form a pattern of conduct that is consistent with only one mental state: the purposeful, knowing, and deliberate intent to deprive Plaintiff of her constitutional rights. No combination of administrative error, good faith misapplication of law, or judicial inadvertence can account for the totality of this record. The founding generation, in designing the constitutional structure, specifically anticipated such a pattern. Madison, in *Federalist No. 51*, observed that in "framing a government which is to be administered by men over men," the constitutional design must "oblige [government] to control itself"—because men, given unchecked authority, will naturally expand it. The pattern documented in this case—oral announcement, deliberate escalation, formal written order, contempt threat—is not aberrational. It is the predictable trajectory of governmental power operating without structural checks. Defendant Tolan's *mens rea* is established not merely by his individual acts but by the predictable operation of unchecked power that the constitutional structure was designed to prevent. The § 1983 cause of action is the structural mechanism the Framers designed to impose the external check that the state judicial system failed to supply.

## G. Defendant Jorgenson's Mens Rea Is Independently Established

108. Defendant Sharon Jorgenson's criminal intent is established through a parallel but independent analysis. As Clerk of Court, Jorgenson's duty to receive and docket properly submitted filings is mandatory, non-discretionary, and ministerial.

109. The failure to docket Plaintiff's six properly submitted documents constitutes, at minimum, knowing conduct. A clerk of court who receives documents through the authorized eFiling system and fails to docket them is aware that the documents will not become part of the official record and that the submitting party will be deprived of the benefit of having filed them.

110. If Clerk Jorgenson refused to docket Plaintiff's filings pursuant to a directive from Judge Tolan, her conduct constitutes purposeful participation in the deprivation of constitutional rights. Obedience to an unlawful order is not a defense; it is evidence of participation in the unlawful act.

111. The execution of Document 14's renaming directive provides the most direct evidence of Clerk Jorgenson's *mens rea*. The physical act of entering the electronic docket system, locating each of Plaintiff's six filings by their substantive document names, and manually replacing each name with a generic label is not a passive administrative function. It requires affirmative, deliberate action for each document. A clerk who performs this act six times cannot claim ignorance of the nature or effect of her actions. The repetition itself establishes knowing and purposeful conduct.

112. The eFiling system's own email confirmations (Exhibit C) provide the most precise and irrefutable evidence of Clerk Jorgenson's knowing and purposeful participation in the suppression of Plaintiff's defense. The timestamps are unambiguous: at 11:03–11:04 AM on March 5, 2026, the Clerk's office entered all six of Plaintiff's defense filings onto the official docket — documents that had been submitted on February 27, 2026, and withheld from the

record for six days. At 11:09 AM — five minutes later — the Clerk's office filed Document 14, the Order striking and renaming those very filings. A clerk who holds six defense documents for six days, enters them onto the docket in a one-minute burst, and then five minutes later files the Order that destroys them, has not failed to perform a ministerial duty through inadvertence or oversight. She has performed a coordinated, choreographed sequence of administrative acts designed to create the procedural fiction that the documents were received and simultaneously stricken — as though the six-day withholding had never occurred. The precision and synchronization of this sequence — six filings entered in sixty seconds, followed by the striking Order five minutes later — is not consistent with routine clerical processing. It is consistent with the deliberate execution of a predetermined plan to suppress a criminal defendant's sworn testimony, legal memoranda, and motions from the official record of a Class C felony proceeding.

113. The evidence of Clerk Jorgenson's knowing and purposeful participation is not limited to her individual mens rea — it establishes her role as an active co-conspirator in the coordinated suppression of Plaintiff's defense. A clerk who receives six defense documents through the State's authorized eFiling system and, rather than docketing them as her ministerial duty requires, withholds them for six days and diverts them to the presiding judge for private review, has not merely failed in her duty — she has entered into a course of conduct with the judge that is intelligible only as the product of an agreement. The agreement is further confirmed by the execution sequence on March 5, 2026: the Clerk's office entered all six filings onto the docket at 11:03–11:04 AM and then filed Document 14 at 11:09 AM. This five-minute choreography required advance knowledge of the Order's existence and content — the Clerk's office had to know that Document 14 was ready, that it directed the striking and renaming of the very filings

being entered, and that the entry and striking were to occur in immediate succession. A clerk acting independently, or acting merely in obedience to a judicial order she had no part in planning, would not have executed a six-step administrative sequence with the precision of a predetermined script. Clerk Jorgenson's conduct on March 5 — the synchronized docketing, the immediate filing of the striking Order, and the systematic renaming that followed — is the conduct of a person who knew the plan because she helped design it. Her mens rea for conspiracy liability under § 1983 is independently and conclusively established by the documented record.

### H. Conclusion: The Record Speaks for Itself

114. The documented record in this case—consisting of Judge Tolan's on-record oral statement of March 2, 2026; the formal written Order of March 4, 2026 (Document 14); the altered electronic docket of Case No. 2026CF000023; and the confirmed eFiling submissions of February 27, 2026—constitutes a self-authenticating evidentiary record of criminal intent. No witness testimony is required to establish *mens rea* in this case. The Defendants have memorialized their own intent in the official records of the Polk County Circuit Court. As the Supreme Court observed in *Olmstead v. United States*, 277 U.S. 438, 485 (1928) (Brandeis, J., dissenting): when the Government becomes a lawbreaker, it breeds contempt for law. Here, the lawbreaking is not merely documented—it is self-documented, in the Defendants' own words, in the Defendants' own order, and on the Defendants' own docket.

## VIII. DAMAGES SOUGHT

115. Plaintiff seeks the following damages against Defendants Daniel Joseph Tolan and Sharon Jorgenson, each in their individual and personal capacity, jointly and severally:

116. **Compensatory Damages** in the amount of THREE MILLION FIVE HUNDRED THOUSAND DOLLARS ($3,500,000.00), representing: (a) the severe emotional distress, mental anguish, and psychological harm inflicted upon a 61-year-old woman who has been stripped of her constitutional right to defend herself against a charge carrying 40 years' imprisonment; (b) the deprivation of her fundamental right to present her sworn defense testimony and supporting legal memoranda; (c) reputational harm; (d) the costs and burden of seeking federal intervention to secure rights that should never have been denied; and (e) the ongoing deprivation of liberty attendant to criminal prosecution in a proceeding where her defense has been not merely suppressed but affirmatively destroyed from the record by Document 14.

117. **Punitive Damages** in the amount of SIX MILLION DOLLARS ($6,000,000.00). The willful, deliberate, and escalating nature of Judge Tolan's constitutional violations demonstrates a reckless and callous indifference to the federally protected rights of the Plaintiff that warrants significant punitive damages to deter such conduct. *Smith v. Wade*, 461 U.S. 30 (1983).

118. **Attorney's Fees and Costs** pursuant to 42 U.S.C. § 1988, and all such further relief as this Court deems just and proper.

119. **Total Civil Damages Sought**: NINE MILLION FIVE HUNDRED THOUSAND DOLLARS ($9,500,000.00).

## PART II

### CHALLENGE TO PROBABLE CAUSE AND
### DEMAND FOR GRAND JURY INDICTMENT

### IX. CHALLENGE TO THE SUFFICIENCY OF PROBABLE CAUSE

120. Plaintiff hereby challenges the sufficiency of the probable cause determination underlying the criminal charge in *State of Wisconsin v. Mary J. Comer*, Case No. 2026CF000023. The charge was brought forth by the State of Wisconsin's prosecuting attorney based upon an Information—not a grand jury indictment. Plaintiff asserts that the testimonial evidence upon which the Information is predicated is so thoroughly riddled with material inconsistencies, internal contradictions, logical impossibilities, and physical implausibilities as to be incapable of supporting a probable cause finding before any impartial tribunal.

121. The twenty-five documented inconsistencies set forth above . . . **[REDACTED]** . . . incorporated herein by reference—demonstrate that the testimony of the alleged victim shifts fundamentally between the initial police report of November 3, 2024, and the forensic interview of November 12, 2024. The manner of entry into the residence changes. The presence or absence of Halloween candy changes. The location of the first physical contact changes. The sequence of events changes. The reason for being in the bedroom changes. The verbal resistance changes. The sister's involvement changes. The phone call circumstances change. What the sister witnessed and heard changes. The number of visits to the residence changes. These are not peripheral details. They are the constitutive elements of the alleged offense.

122. The Information filed by the prosecuting attorney, when subjected to any meaningful scrutiny, does not establish probable cause to believe that the offense charged was committed as alleged. *Illinois v. Gates*, 462 U.S. 213 (1983). No reasonable person reviewing the totality of the testimonial evidence could form such a belief.

123. Due process requires the absence of presumption. Waivers of constitutional rights must be voluntary, knowing, and intelligent. *Brady v. United States*, 397 U.S. 742, 749 (1970). There is a

presumption against waiver of constitutional rights. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Brookhart v. Janis*, 384 U.S. 1 (1966).

## X. DEMAND FOR GRAND JURY REVIEW AND SIGNED INDICTMENT

124. Plaintiff demands that a grand jury convened under Article III authority review the totality of the testimonial evidence to determine whether the charges brought forth by the State of Wisconsin's prosecuting attorney are substantiated by competent, consistent, and credible evidence. The Fifth Amendment provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."

125. The charge of Second Degree Sexual Assault of a Child under Wisconsin Statute § 948.02(2) is a Class C felony carrying up to forty years of imprisonment. A charge of this magnitude demands the constitutional safeguard of grand jury scrutiny. The grand jury exists precisely to serve as a shield between the power of the government and the liberty of the citizen. *Hale v. Henkel*, 201 U.S. 43 (1906).

126. Plaintiff demands a signed indictment by a duly convened grand jury as the exclusive constitutionally permissible basis for proceeding on a charge of this gravity.

## PART III

## DEMAND FOR FOLLOW-UP FORENSIC INTERVIEWS

## XI. DEMAND FOR FOLLOW-UP FORENSIC INTERVIEW OF THE ALLEGED VICTIM

127. Plaintiff demands that a follow-up forensic interview of the alleged victim be conducted by a qualified forensic interviewer, independent of law enforcement, to resolve the twenty-five material inconsistencies documented herein. The initial forensic interview conducted by Carrie

Hutton on November 12, 2024, produced an account that is fundamentally irreconcilable with the initial police report given to Officer Sam Mahoney on November 3, 2024.

128. The evidentiary deficiencies demanding follow-up forensic examination of the alleged victim are not peripheral or susceptible to charitable interpretation — they are structural fractures that render the prosecution's theory facially absurd. The prosecution's central physical narrative requires this Court to accept that a sixty-one-year-old woman standing five feet two inches tall, afflicted with a knee injury that caused her to limp, repeatedly seized, threw, pinned, and disrobed a six-foot-three-inch, one-hundred-eighty-three-pound Division-level varsity football player and championship-caliber competitive wrestler — a proposition that contravenes the established laws of biomechanics and elementary common sense. . . . [REDACTED] . . . These are but the most facially devastating of no fewer than twenty-five (25) documented material inconsistencies, irreconcilable contradictions, factual impossibilities, physical implausibilities, fabricated accounts, and indicia of deliberate narrative manipulation identified through forensic analysis of the prosecution's own charging instrument. Due process demands that every one of these deficiencies be addressed through properly conducted follow-up forensic interviews of the alleged victim, his sister, and his mother by qualified investigators independent of the agencies that produced this fundamentally compromised evidentiary record.

## XII. DEMAND FOR FOLLOW-UP FORENSIC INTERVIEW OF THE SISTER

129. Plaintiff demands that a follow-up forensic interview of the alleged victim's sister be conducted to resolve the irreconcilable contradictions between her account, the alleged victim's account, and the mother's report of the sister's initial statement. The sister's testimony is critical because she is the only eyewitness other than the alleged victim and Ms. Comer.

130. The sister's initial exclamation upon returning home—"[Victim] is f***ing Mary"—characterizes the alleged victim as the active party and implies perception of consensual activity, not an assault. The sister's subsequent fear that the alleged victim "would be mad at her" for reporting is not merely incidental—it is directly probative of the alleged victim's coercive influence over those in a position to contradict his narrative. If the alleged victim was the initiating party—as Ms. Comer has consistently maintained from the night of the incident—then his potential anger at the sister's disclosure would be entirely consistent with a desire to control the narrative and suppress evidence of his own conduct. The sister's ongoing refusal to discuss the incident—including in professional counseling sessions—is equally consistent with pressure or intimidation by the alleged victim to maintain silence. This dynamic demands investigation by competent federal authorities, as it bears directly on whether the testimonial evidence underlying this prosecution has been manufactured, coerced, or manipulated. The sister's testimony, properly examined, may constitute exculpatory evidence of the highest order.

## PART IV

## DEMAND THAT THE FEDERAL GOVERNMENT EXERCISE AND ASSERT JURISDICTION OVER THE ENTIRETY OF THIS MATTER

### XIII. THE CONSTITUTIONAL NECESSITY OF FEDERAL INTERVENTION

131. Plaintiff demands that this Court exercise and assert federal jurisdiction over the entirety of this matter—including the underlying state criminal proceeding—because the constitutional violations at issue cannot be remedied within the state judicial system that is itself the instrument of their commission. Document 14 confirms that the state court has not merely made an erroneous ruling—it has issued a formal order establishing a permanent regime of constitutional deprivation.

132. The Supreme Court established in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), that for every violation of a vested legal right, there must exist a corresponding legal remedy. The Supreme Court declared in *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), that the exercise of governmental power to subjugate the constitutional rights of any person to the mere will of a single official is "the essence of slavery itself." The Supreme Court held in *Ex parte Young*, 209 U.S. 123 (1908), that federal courts have the authority and the obligation to enjoin state officials who act in violation of the federal Constitution.

133. Alexander Hamilton, writing in *Federalist No. 80*, identified as a constitutionally proper object of federal judicial authority "all those [cases] in which the state tribunals cannot be supposed to be impartial and unbiassed." He declared: "The reasonableness of the agency of the national courts, in cases in which the state tribunals cannot be supposed to be impartial, speaks for itself. No man ought certainly to be a judge in his own cause, or in any cause, in respect to which he has the least interest or bias." The case before this Court does not require inference or allegation of partiality—the state court's own formal written order, Document 14, is the evidence. A tribunal that has issued a written order striking the defendant's sworn testimony, banning her chosen counsel from participation, renaming her filings to conceal their content, and threatening contempt for any attempt to exercise her constitutional rights cannot be supposed impartial. Hamilton further articulated the foundational proposition: "There ought always to be a constitutional method of giving efficacy to constitutional provisions." The constitutional necessity of federal jurisdiction in these precise circumstances is not a modern legal innovation—it is the founding design.

134. Federal jurisdiction is further compelled by the fact that the charge itself rests upon testimonial evidence containing twenty-five documented material inconsistencies that have never

been subjected to adversarial scrutiny because the state court has—by formal written order—refused to accept and has affirmatively destroyed the documents that would enable such scrutiny. The federal government must exercise jurisdiction to ensure that Plaintiff receives the fundamental protections guaranteed by Articles III and VI of the Constitution and the Bill of Rights—protections that the state court has, by its own formal written order, refused to provide.

# PART V

## CRIMINAL CHARGES DEMANDED AGAINST
## JUDGE DANIEL JOSEPH TOLAN

### XIV. DEMAND FOR CRIMINAL ACCOUNTABILITY

135. Plaintiff demands that the following criminal charges be investigated, pursued, and prosecuted against Judge Daniel Joseph Tolan for his actions taken under color of state law in his official capacity as a judge of the Polk County Circuit Court, and for his personal liability arising from conduct that has forfeited any claim to qualified immunity. The following offenses are identified with their corresponding statutory penalties:

#### A. FEDERAL CRIMINAL OFFENSES

#### 1. 18 U.S.C. § 242 — Deprivation of Rights Under Color of Law

**Conduct:** Judge Tolan, acting under color of state law in his official judicial capacity, willfully deprived Ms. Comer of rights, privileges, and immunities secured by the Constitution and laws of the United States, including the rights secured by the First, Fifth, Sixth, Ninth, and Fourteenth Amendments. The on-record judicial admission of March 2, 2026, and the formal written Order of March 4, 2026 (Document 14), establish willfulness as a matter of documentary fact.

**Penalty:** Fine, imprisonment up to one (1) year; if bodily injury results or the offense includes the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, imprisonment up to ten (10) years; if death results or the offense includes kidnapping, attempted kidnapping, aggravated sexual abuse, attempted aggravated sexual abuse, or an attempt to kill, imprisonment for any term of years or life, or death.

## 2. 18 U.S.C. § 241 — Conspiracy Against Rights

**Conduct:** If the on-record refusal and subsequent written Order reflect or involve any coordination, communication, or agreement between the court and the prosecution—including any understanding that Plaintiff's defense filings are to be excluded to the prosecution's advantage—such coordination constitutes a federal conspiracy to deprive Ms. Comer of her constitutional rights.

**Penalty:** Fine, imprisonment up to ten (10) years; if death results or the offense includes kidnapping, attempted kidnapping, aggravated sexual abuse, attempted aggravated sexual abuse, or an attempt to kill, imprisonment for any term of years or life, or death.

## 3. 18 U.S.C. § 1512(c)(2) — Obstruction of an Official Proceeding

**Conduct:** Judge Tolan's on-record refusal and subsequent formal Order (Document 14) directing the striking and renaming of sworn testimony and legal memoranda directly supporting the Defendant's complete defense obstructs the criminal proceeding by preventing the court from having access to the full evidentiary and legal record.

**Penalty:** Fine, imprisonment up to twenty (20) years, or both.

## 4. 18 U.S.C. § 1519 — Destruction, Alteration, or Falsification of Records

**Conduct:** Document 14 expressly orders that all stricken filings have their document names changed to "Third-party filing Stricken by the Court." This directive creates a false and incomplete official record by design.

**Penalty:** Fine, imprisonment up to twenty (20) years, or both.

### 5. 18 U.S.C. § 1503 — Influencing or Injuring Officer or Juror Generally (Omnibus Clause)

**Conduct:** Judge Tolan's conduct—from oral refusal through formal written order—constitutes corrupt endeavor to influence, obstruct, and impede the due administration of justice in a pending judicial proceeding.

**Penalty:** Fine, imprisonment up to ten (10) years, or both.

### 11. 18 U.S.C. § 1509 — Obstruction of Court Orders

**Conduct:** To the extent that Judge Tolan's actions obstruct or impede the enforcement of any order, judgment, or decree issued pursuant to federal civil rights statutes, his conduct constitutes a violation of § 1509.

**Penalty:** Fine, imprisonment up to one (1) year, or both.

### 12. 18 U.S.C. § 1521 — Retaliating Against a Party for Exercising Constitutional Rights

**Conduct:** The escalation from oral refusal to formal written order—issued after Plaintiff asserted her constitutional right to chosen counsel and filed sworn testimony adverse to the prosecution—constitutes retaliatory action against a party for exercising protected constitutional rights.

**Penalty:** Fine, imprisonment up to ten (10) years, or both.

### 13. 18 U.S.C. § 371 — Conspiracy to Defraud the United States

**Conduct:** If investigation reveals coordination between the court and the prosecution to exclude Plaintiff's defense from the record, such conduct constitutes a conspiracy to defraud the United States of its right to the honest services of a judicial officer.

**Penalty:** Fine, imprisonment up to five (5) years, or both.

### 14. 18 U.S.C. § 2 — Aiding and Abetting / Principals

**Conduct:** Any person who aids, abets, counsels, commands, induces, or procures the commission of an offense against the United States is punishable as a principal.

**Penalty:** Punishable as a principal for the underlying offense.

### 15. 18 U.S.C. § 4 — Misprision of Felony

**Conduct:** Any person having knowledge of the commission of a federal felony who conceals the same and does not make it known to the appropriate authorities is guilty of misprision of felony.

**Penalty:** Fine, imprisonment up to three (3) years, or both.

## B. WISCONSIN STATE CRIMINAL OFFENSES

### 19. Wis. Stat. § 946.12 — Misconduct in Public Office

**Conduct:** Judge Tolan, as a public officer, intentionally failed to perform a mandatory known duty—the acceptance and docketing of properly filed documents—and intentionally exercised discretionary power in a manner inconsistent with the duties of his office and the rights of Plaintiff.

**Penalty:** Class I Felony. Fine up to $10,000, imprisonment up to three (3) years and six (6) months, or both.

### 20. Wis. Stat. § 946.13 — Private Interest in Public Contract/Official Action

**Conduct:** To the extent Judge Tolan's actions serve any interest other than the impartial administration of justice—including any coordination with the prosecution—his conduct constitutes the advancement of a private interest through the exercise of official power.

**Penalty:** Class I Felony. Fine up to $10,000, imprisonment up to three (3) years and six (6) months, or both.

### 23. Wis. Stat. § 946.72 — Tampering with Public Records and Notices

**Conduct:** Document 14's directive to change document names to "Third-party filing Stricken by the Court" constitutes tampering with a public record by alteration.

**Penalty:** Class I Felony. Fine up to $10,000, imprisonment up to three (3) years and six (6) months, or both.

### 24. Wis. Stat. § 946.31 — Perjury (if applicable)

**Conduct:** If Judge Tolan or any court officer makes any false statement under oath regarding the circumstances of the filings' rejection or the reasons therefor, such statement constitutes perjury under Wisconsin law.

**Penalty:** Class H Felony. Fine up to $10,000, imprisonment up to six (6) years, or both.

### 25. Wis. Stat. § 940.295 — Abuse of Individuals at Risk

**Conduct:** Ms. Comer is a 61-year-old widow facing 40 years' imprisonment, denied the right to present her defense. The deliberate deprivation of fundamental constitutional protections from an elderly defendant who is a widow, proceeding in propria persona, constitutes an abuse of the power differential inherent in the judicial relationship.

**Penalty:** Varies by severity; Class H Felony for intentional conduct. Fine up to $10,000, imprisonment up to six (6) years, or both.

**26. Wis. Stat. § 946.65 — Obstructing Justice**

**Conduct:** Judge Tolan's deliberate refusal to accept defense filings, formalized in Document 14, obstructs the administration of justice by preventing the full and fair adjudication of a criminal proceeding.

**Penalty:** Class A Misdemeanor. Fine up to $10,000, imprisonment up to nine (9) months, or both.

## C. CRIMINAL CHARGES APPLICABLE TO CLERK OF COURT SHARON JORGENSON

**27. 18 U.S.C. § 242 — Deprivation of Rights Under Color of Law**

**Conduct:** Clerk Jorgenson, acting under color of state law in her official capacity as Clerk of Court, willfully failed to perform her mandatory ministerial duty to receive, file, and docket six documents properly submitted through Wisconsin's authorized eFiling system, thereby participating in the deprivation of Ms. Comer's constitutional rights.

**Penalty:** Fine, imprisonment up to one (1) year; enhanced penalties if bodily injury results.

**29. Wis. Stat. § 946.12 — Misconduct in Public Office**

**Conduct:** Clerk Jorgenson, as a public officer, intentionally failed to perform a mandatory known duty—the acceptance and docketing of properly submitted documents—and may additionally have executed the directive in Document 14 to alter the document names of properly filed defense documents.

**Penalty:** Class I Felony. Fine up to $10,000, imprisonment up to three (3) years and six (6) months, or both.

**30. Wis. Stat. § 946.72 — Tampering with Public Records and Notices**

**Conduct:** To the extent that Clerk Jorgenson or her staff executed Document 14's directive to change document names to "Third-party filing Stricken by the Court," such action constitutes tampering with a public record by alteration.

**Penalty:** Class I Felony. Fine up to $10,000, imprisonment up to three (3) years and six (6) months, or both.

## XV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mary Joanna Comer respectfully prays that this Honorable Court grant the following relief:

A. Enter judgment against Defendants Daniel Joseph Tolan and Sharon Jorgenson, each in their individual and personal capacity, jointly and severally, in the amount of NINE MILLION FIVE HUNDRED THOUSAND DOLLARS ($9,500,000.00) in compensatory and punitive damages pursuant to 42 U.S.C. § 1983;

B. Issue a declaratory judgment that Defendants' on-record refusal, subsequent written Order (Document 14), and failure to perform mandatory ministerial duties with respect to Plaintiff's properly submitted filings in Case No. 2026CF000023 violates the First, Fifth, Sixth, Ninth, and Fourteenth Amendments to the United States Constitution;

C. Enter a declaratory judgment that Defendants Tolan and Jorgenson conspired, in violation of 42 U.S.C. § 1983, to deprive Plaintiff of her rights under the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution through a coordinated course of conduct including the withholding, diversion, extrajudicial review, coordinated docketing-and-striking, and systematic renaming of Plaintiff's defense filings in Case No. 2026CF000023;

D. Issue an injunction ordering the immediate restoration and entry of all six properly submitted documents into the official court record of Case No. 2026CF000023, with their original document names restored;

E. Order the immediate restoration of the official court record in Case No. 2026CF000023 to reflect the substantive titles of Plaintiff's six defense filings as originally submitted through the Wisconsin eFiling system on February 27, 2026, and the removal of the generic label "Third-party filing Stricken by the Court" from the CCAP public docket and all official records;

F. Issue an injunction vacating Document 14 in its entirety as an unconstitutional order that deprives Plaintiff of her fundamental rights under the First, Fifth, Sixth, and Fourteenth Amendments;

G. Hold Defendants Tolan and Jorgenson jointly and severally liable for all compensatory and punitive damages arising from the conspiracy, reflecting the fact that each Defendant's participation was essential to the success of the coordinated deprivation and that neither could have accomplished the suppression of Plaintiff's defense acting alone;

H. Award punitive damages against each Defendant individually, in an amount sufficient to punish the willful, malicious, and coordinated nature of the conspiracy and to deter future conspiracies between judicial officers and court personnel to suppress a criminal defendant's constitutional rights. See Smith v. Wade, 461 U.S. 30 (1983);

I. Order a follow-up forensic interview of the alleged victim to resolve the twenty-five documented material inconsistencies in his testimony;

J. Order a follow-up forensic interview of the alleged victim's sister to resolve the irreconcilable contradictions between her account, the alleged victim's account, and the mother's report of her initial statement;

K. Dismiss the charges against Plaintiff for want of probable cause, or in the alternative, require the prosecution to obtain a signed grand jury indictment before proceeding;

L. Exercise and assert federal jurisdiction over the entirety of this matter pursuant to Article III of the Constitution, 28 U.S.C. §§ 1331, 1343, and the federal civil rights removal authority;

M. Refer the criminal charges enumerated in Part V of this Complaint to the United States Attorney's Office for the Western District of Wisconsin for investigation and prosecution;

N. Refer the conduct of Defendants Tolan and Jorgenson to the United States Attorney for the Western District of Wisconsin and the Civil Rights Division of the United States Department of Justice for investigation and potential prosecution under 18 U.S.C. § 241 (conspiracy against rights) and any other applicable federal criminal statutes;

O. Award Plaintiff her reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

P. Award such other and further relief as this Court deems just, proper, and equitable.

## XVI. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38.

## XVII. DECLARATION UNDER PENALTY OF PERJURY

The undersigned Plaintiff and Constitutional Counsel of Choice declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct to the best of their knowledge, information, and belief.

Respectfully submitted,

_Mary Comer_ Date: 3 / 25 / 26
Mary Joanna Comer, Plaintiff

*In Propria Persona — Without Waiver of Any Rights*
852 Elmer Avenue, Amery, Wisconsin 54001
Phone: (617) 835-9319
Email: ThyKingdomCome1322@gmail.com

_____ Date: 03/25/2026

Thomas Edward Humphrey, Constitutional Counsel of Choice
*Appearing solely as Constitutional Counsel, not as a licensed attorney or officer of the Court*
107 Middlesex Road, Apartment 5, Waltham, Massachusetts 02452
Phone: (617) 835-9319
Email: ThyKingdomCome1322@gmail.com